## C. ADOLPH LOW & CO., Respondent, v. ALEXANDER AUSTIN, Appellant.

### No. 2369; October 12, 1870.

Taxation.—Imported Goods Exposed for Sale in the Store of a merchant constitute a portion of the wealth of the state, for purposes of taxation, as much as do domestic goods similarly situated; and it is immaterial whether the importer is also the merchant who sells or whether the goods are in the original packages and at the time owned abroad.

APPEAL from Fifteenth Judicial District, San Francisco County.

Hambleton & Gordon for respondent; H. H. Byrne for appellant.

TEMPLE, J.—The plaintiffs are importing, shipping and commission merchants at San Francisco, and in their capacity as commission merchants have in their hands for sale certain champagne wines in cases. The wines are the property of Gustave Gibert, of Rheims, in France, by whom they were consigned to the plaintiffs, and subject to whose orders they are held.

The goods had, just prior to their possession by plaintiffs, been imported by Gibert. The custom-house duties and charges having been paid, they were stored by plaintiffs in

their warehouse in the original packages in which they were imported, and while in that condition, being still unsold, were assessed by the assessor of the city and county of San Francisco for state and county taxes. Upon seizure of goods being made by the tax collector, to enforce the payment of these taxes, they paid under protest, and this suit is brought to recover the amount paid. The plaintiffs had judgment and defendant appeals. The tax was levied under the general revenue law of the state, and is an ad valorem tax upon all values in the state alike, and the only question presented is whether it is a tax upon imports within the meaning of the tenth section of the first article of the constitution of the United States, the material portion of which reads as follows: "No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the reversion and control of the Congress."

The case of Brown v. Maryland, 12 Wheat. (U. S.) 419, 6 L. Ed. 678, is confidently relied upon by the respondent as having decided the question in his favor. In that case the court declared an act of the state of Maryland, requiring all persons who should sell imported goods by wholesale, bale or package, to take out a license from the state, for which they were required to pay fifty dollars, in conflict with the provisions of the constitution of the United States above quoted, and also to that which confers upon Congress the power to regulate commerce. It was held that the license was a tax upon the articles imported; that it intercepted the goods before they had become mingled with the mass of property of the state, and, therefore, it was a tax upon the goods as imports, and consequently within the constitutional inhibition.

It will be seen at a glance from a mere statement of the two cases that they do not rest upon the same principle. In this case no tax is levied upon imports, as such; they are not subjected to any burden as a class, and we do not understand the case of Brown v. Maryland as going to the extent of establishing that an ad valorem tax by the state upon the property of its citizens would be in conflict with this provision, even

though a portion of such values were invested in imported goods still in the original packages and unsold. This was the understanding of that case entertained by Chief Justice Taney, who argued the case for the state of Maryland. In the License Cases, 5 How. 575, speaking of this decision, he says: "I argued the case in behalf of the state, and endeavored to maintain that the law of Maryland, which required the importer as well as other dealers to take out a license before he could sell, and for which he was to pay a certain sum to the state, was valid and constitutional; and certainly I at that time persuaded myself that I was right, and thought the decision of the court restricted the powers of the state more than a sound construction of the constitution of the United States would warrant. But further and more mature reflection has convinced me that the rule laid down by the supreme court is a just and safe one, and perhaps the best that could have been adopted for preserving the right of the United States on the one hand and of the states on the other, and preventing collision between them. . . . .

"Undoubtedly a state may impose a tax upon its citizens in proportion to the amount they are respectively worth; and the importing merchant is liable to this assessment like any other citizen, and is chargeable according to the amount of his property, whether it consists of money engaged in trade or of imported goods which he proposes to sell, or any other property of which he is the owner. But a tax of this description stands upon a very different footing from a tax on the thing imported while it remains a part of foreign commerce and is not introduced into the general mass of property in the state. Nor, indeed, can it even influence materially the price of the commodity to the consumer, since foreigners as well as citizens of other states, who are not chargeable with the tax may import goods into the same place and offer them for sale in the same market, and with whom the resident merchant necessarily enters into competition."

To the same effect is the language of Mr. Justice McLean in Nathan v. Louisiana, 8 How. (U. S.) 73, 12 L. Ed. 992:

"What is there in the products of agriculture, of mechanical ingenuity, of manufactures, which may not become the means of commerce? And is the vender of these products exempted from state taxation because they may be thus used? Is a

tax upon a ship, as property, which is admitted to be an instrument of commerce, prohibited to a state? May it not tax the business of ship-building the same as the exercise of any other mechanical art? And also the traffic of ship-chandlers, and others, who furnish the cargo of the ship and the necessary supplies? There can be but one answer to these questions. No one can claim an exemption from a general tax on his business within the state on the ground that the products sold may be used in commerce. No state can tax an export or an import as such except under the limitations of the constitution.''

In the case of State v. North, 27 Mo. 464, the supreme court held an act, which imposed a discriminating tax upon imports, after they had been sold by the importer and after the packages in which they had been brought into the country and been broken was in conflict with this provision of the constitution.

The discussion in Brown v. Maryland evidently has reference to a tax upon imports as such, that is, upon articles which have been imported—as a distinctive class—and had no reference to such general property taxes as the state may impose upon all property within its borders, but discriminates neither in favor of nor against any. This is the view taken of that case by the supreme court of this state in Lin Sing v. Washburn, 20 Cal. 534. The question involved in that case was the right of the state to impose a license tax upon the Chinese. It was claimed that the tax was in conflict with that provision of the constitution which empowers Congress to regulate commerce and also with certain treaties and laws of Congress. Mr. Justice Cope, in the course of an able opinion, referring to the case of Brown v. Maryland, says: ''It was admitted that when the article had lost its character as an import by being incorporated and mixed up with the mass of property in the country, it became subject, like other property, to the taxing power of the state. This admission, however, does not acknowledge the power of a state to single out an imported article and subject it to a tax not imposed upon other property of the same description; and such a tax would undoubtedly come within the principle of the decision. The whole reasoning of the decision shows that a discriminating tax, the effect of which would be to give preferences and close

the markets against imported articles, would be invalid, and it is impossible that any circumstance could give validity to it. The court did not intend to distinguish between wholesale and retail dealers, nor between the importer and other persons purchasing the articles for the purposes of traffic, but to lay down a rule covering the whole ground of state interference. The free use of the powers vested in the government was declared to be essential to its existence, and the intention was to lay down the rule broad enough to include every act of a state obstructing or impeding the constitutional measures of the government. A state may tax the property of its citizens, but it cannot tax imports; and a tax discriminating against an imported article would be a tax upon the article as an import and not as a part of the general mass of property.''

In the case of Brown **v**. Maryland it was contended on the part of the state that goods retained their distinct character as imports only while in transitu and that after they were once landed they became incorporated with the mass of property constituting the wealth of the state, and were not imports within the meaning of the constitutional inhibition. It was held, however, that the right to import implied the right to sell, that being in general the reason for importing, and also that the power of the United States to regulate commerce does not terminate at the boundaries of a state. That a tax imposed upon imported goods, after they have been landed within the state, would tend as effectually to prevent or restrict importations as would one imposed before they are landed, and such tax would, therefore, as effectually tend to defeat the object of the prohibition.

The federal government having no powers except such as are granted to it by special enumeration, and the states retaining all not granted or prohibited, the presumption must be in favor of the validity of the state law, until it is shown to be in conflict with some provision of the constitution of the United States, or some law of Congress, or treaty made in pursuance of the powers granted.

It is admitted that the state may tax imported goods after they have become incorporated with the mass of the wealth of the state. It is contended that the property taxed in this case had not become incorporated with the mass of the gen-

eral wealth of the state, simply because it was still the property of the importer in the original packages in which it was imported.

We see nothing in this which even tends to show that the property had not become incorporated with the general wealth of the state. We see no reason why imported goods, exposed 'n the store of a merchant for sale, do not constitute a por-on of the wealth of the state as much as do domestic goods ιilarly situated. Nor do we see the slightest difference ether the importer is also the merchant who sells, or whether the goods are in the original packages or not. In either case the goods are exposed for sale in the markets for the profit which may be realized from selling. They may be equally the basis of credit, and alike they require and receive the benefit of the police laws of the state, and upon every principle of equality should contribute to pay for their protection. Possibly the plaintiff, who is a commission merchant, has in his store champagne wines manufactured in Sonoma or Los Angeles, which he is offering to sell in the same market in precisely similar packages. In what possible sense can one be said to constitute a portion of the wealth of the state in which the other does not? The object of the constitutional restriction is said to be to prevent the state from imposing a tax upon commerce—to discriminate against foreign goods. It certainly cannot be intended to discriminate against domestic productions, by exempting foreign goods from its share of the cost of protecting it.

A tax, which is imposed alike upon all the property of the state, cannot, in any sense, be considered a tax upon commerce. It has no tendency to discourage importations. Exemption from the tax might encourage importations, but certainly it was not the purpose of the restriction to compel the state to offer a bounty to foreign producers over domestic. The tax prohibited must be a tax upon the character of the goods as importations rather than upon the goods themselves as property.

But it is not true that the right of the state to tax imports depends upon the question whether they are still in the original packages, in the hands of the importer or wholesale dealer, or not; nor even whether they have become thoroughly incorporated into the general mass of property or not. It is

said that a power which can impose a small tax may impose a large one, and, therefore, if there were no restriction, the state could, through its power of taxation, prevent importations altogether. If the test as to whether the goods are imports or not, within the meaning of the restriction, be whether they are still in the hands of the importer or a wholesale dealer, in the original packages, or not, then as soon as they have been sold or the packages broken it would follow that the state might impose any tax it might see fit. But a large tax upon the consumer of foreign goods would as effectually prevent importation as a tax upon the commodity in the hands of the importer. Many articles might not be taxed until after they had been in the hands of the consumer for years, as, for instance, railroad iron, and then be subject to so high a tax as effectually to prevent all importations. There can be no doubt that such a tax would be declared void, otherwise the restriction can serve no purpose whatsoever. Any tax upon imported goods as a class, or which discriminates against them, is within inhibition. On the other hand, all the wealth of the state, whether it be in imported goods, in the hands of the importer, or in the original packages in which they were imported, or not, are subject to the general ad valorem tax, which is imposed alike upon all values within the state.

The judgment is reversed and cause remanded, with directions to enter final judgment for the defendant.

We concur: Wallace, J.; Crockett, J.; Sprague, J.