[Nos. 36215, 36267. En Banc. August 16, 1962.]

TRICON, INC., *Respondent,* v. KING COUNTY, *Appellant.*

F. L. HARTUNG GLASS COMPANY, INC., *Respondent,* v. KING COUNTY *et al., Appellants.**

*Charles O. Carroll, James J. Caplinger,* and *William L. Paul, Jr.,* for appellant.

*Evans, McLaren, Lane, Powell & Moss, G. Keith Grim,* and *Raymond W. Haman,* for respondent Tricon, Inc.

*Croson, Johnson & Wheelon, James F. Loveridge, Jr.,* and *Herman S. Siqueland,* for respondent F. L. Hartung Glass Company, Inc.

HUNTER, J.—As the above entitled cases present substantially identical issues on appeal, they have been consolidated for our review.

The plaintiff Tricon, Inc., brought suit in the Superior Court for King County to obtain a refund of an ad valorem

*Reported in 374 P. (2d) 174.

tax assessed against certain personal property of the plaintiff and paid under protest. The plaintiff F. L. Hartung Glass Company, Inc., brought suit in the same court for injunctive relief to restrain the county assessor and treasurer from collecting an ad valorem tax assessed against certain property belonging to it. In both cases, judgment was awarded for the plaintiff.

The plaintiff Tricon, Inc., is engaged in the business of importing from foreign countries various kinds of steel products. All of these steel products are imported for the sole purpose of resale to purchasers in Washington and in other states. The products, upon which the tax here involved was assessed and paid, were imported from foreign countries and remained, until sold and delivered to purchasers, in their original bundles, reels, crates or packages in which they were received upon entry to this country.

The plaintiff F. L. Hartung Glass Company, Inc., is engaged in the business of importing from foreign countries glass products for resale to purchasers within this state. The glass products, upon arrival at the company's place of business in Seattle, are stored in its warehouse in the original packages in which they arrive upon importation and remain there in that condition until sold to purchasers.

The basis for the judgments in the trial court in favor of the plaintiffs was the prohibition contained in the United States Constitution, Art. 1, § 10, which provides:

 " . . .

"No state shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: . . ."

It has been the long-standing rule since the early cases of *Brown v. Maryland,* 25 U. S. 266 (12 Wheaton 419), 6 L. Ed. 678 (1827) and *Low v. Austin,* 80 U. S. 29 (13 Wallace 29), 20 L. Ed. 517 (1871), that goods imported from foreign countries for resale to purchasers in this country retain their character as imports while they remain in their original packages and, until they are sold by the importer, they are not subject to state taxation either in

the form of a license tax upon the right of the importer to sell or in the form of an ad valorem tax upon the property. See also *Anglo-Chilean Nitrate Sales Corp. v. Alabama,* 288 U. S. 218, 77 L. Ed. 710, 53 S. Ct. 373 (1933).

The defendant King County (appellant in both cases) contends, however, that two recent cases decided by the Supreme Court of the United States, *Youngstown Sheet & Tube Co. v. Bowers* and *United States Plywood Corp. v. City of Algoma,* decided together and reported in 358 U. S. 534, 3 L. Ed. (2d) 490, 79 S. Ct. 383 (1958), have sub silentio modified the rule of the *Brown* and *Low* cases to the extent that the taxes assessed in the instant cases are now not to be considered in violation of Art. 1, § 10 of the United States Constitution and should be upheld as valid exercises of this state's taxing power.

In the *Youngstown Sheet & Tube Co.* case, the taxpayer imported iron ores for its own use in manufacturing and stored them in piles until needed in the manufacturing process. In the *United States Plywood Corp.* case, the taxpayer imported lumber and wood veneers for its own use in manufacturing and stored them in their original containers until they were ready for the manufacturing process. State ad valorem property taxes were levied upon the goods in each case. Upon review from state decisions upholding the constitutionality of the tax assessments, the United States Supreme Court affirmed the state courts and held that, although the goods were in their original containers, they had been committed to the use for which they were imported, *i.e.,* the current inventory of the manufacturing process, and were, therefore, subject to state taxation.

The issue here involves the interpretation and application of the federal constitution and we are bound to follow the decisions of the Supreme Court of the United States, which have passed on this issue. *B. F. Goodrich Co. v. State* 38 Wn. (2d) 663, 231 P. (2d) 325 (1951). It remains, therefore, for this court to determine whether the rule of the *Brown* and *Low* cases, which the appellant concedes would otherwise control the disposition of the instant cases, has been modified. We are convinced, from our reading of the

decision in the *Youngstown Sheet & Tube Co.* and *United States Plywood Corp.* cases, that the Supreme Court did not intend to change the rule applicable to the instant cases.

 In *Brown v. Maryland, supra,* Chief Justice Marshall set forth the underlying principle which governs the question of state tax immunity for imports:

" . . . when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State;"

The Chief Justice went on to say:

" . . . but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution."

As to when the thing imported has been "so acted upon", the court in the *Youngstown Sheet & Tube Co.* and *United States Plywood Corp.* cases, *supra,* specified some of the acts that would shed the tax immunity by recognizing, with approval, language in *Brown v. Maryland, supra:*

" . . . the goods lose their character as imports when the importer (1) 'sells them,' or (2) '[breaks] up his packages, and [travels] with them as an itinerant pedlar.' . . . More important to the question confronting us, he also held (3) that goods brought into this country by an importer 'for his own use' and here 'used' by him are to be regarded as a part of 'the common mass' of property and are not immune from state taxation."

It is apparent from a reading of the opinion, that the issue presented by the facts was limited to an application of the rule as stated in class (3) in the above quote. This is illustrated by the following passages from the court's opinion:

" . . . The constitutional design was then to immunize imports from taxation by the importing States, and all others through or into which they may pass, so long as they retain their distinctive character as imports. Hence, that design is not impinged by the taxation of materials that were imported for use in manufacturing after all phases of the importation definitely have ended and the materials

have been 'put to the use for which they [were] imported' (*Hooven & Allison Co. v. Evatt, supra* [324 U. S.] at 657), for in such a case they have lost their distinctive character as imports and are subject to taxation. . . .

" . . .

" . . . Whatever may be the significance of retaining in the 'original package' goods that have been so imported for sale (*Brown v. Maryland, supra; Waring v. The Mayor,* 8 Wall. 110, 122-123; *Low v. Austin,* 13 Wall. 29, 32-33; *Cook v. Pennsylvania,* 97 U. S. 566, 573; *May v. New Orleans,* 178 U. S. 496, 501, 507-508), goods that have been so imported for use in manufacturing are not exempt from taxation, though not removed from the 'original package,' if, as found here, they have been 'put to the use for which they [were] imported.' *Hooven & Allison Co. v. Evatt, supra,* at 657. Breaking the original package is only one of the ways by which packaged goods that have been imported for use in manufacturing may lose their distinctive character as imports. Another way is by putting them 'to the use for which they [were] imported. . . .' "

We do not think the Supreme Court has indicated by implication that goods imported for resale, and which remain in their original containers, lose their character as imports immune from state taxation when they become a part of the importer's current inventory of goods held for sale. See *Miehle Printing Press & Mfg. Co. v. Department of Revenue,* 18 Ill. (2d) 445, 164 N. E. (2d) 1 (1960); *State ex rel. H. A. Morton Co. v. Board of Review,* 112 N. W. (2d) 914 (Wis. 1962). Whatever may be our thoughts as to any fundamental inconsistency in distinguishing between goods imported for one's own use which become a part of current inventory in the manufacturing process and goods imported for resale which become a part of the importer's current inventory in the selling process, we are bound, as heretofore stated, to accept the rationale of the decisions of the Supreme Court of the United States.

We, therefore, hold that the tax paid under protest by Tricon, Inc., and the tax assessed against F. L. Hartung Glass Company, Inc., are invalid because they were as-

sessed in violation of Art. 1, § 10 of the United States Constitution.

The judgments of the trial court are affirmed.

ALL CONCUR.