Argued January 7, reversed February 9, petition for rehearing
denied March 22, 1966

## COMINCO PRODUCTS, INC. *v.* STATE
## TAX COMMISSION
411 P. 2d 85

*Alfred B. Thomas,* Assistant Attorney General,
Salem, argued the cause for appellant. With him on
the briefs were Robert Y. Thornton, Attorney General,

and Donald C. Seymour, Assistant Attorney General, Salem.

*Alfred H. Stoloff,* Portland, argued the cause for respondent. With him on the brief were Phillips, Coughlin, Buell & Phillips, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, DENECKE and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore).

The defendant, Oregon State Tax Commission, appeals from a tax court decree, 2 OTR Adv Sh 165, holding that the U. S. Constitution, Art. I, § 10, prohibits the levying of an ad valorem tax on certain fertilizers owned and imported by plaintiff, Cominco Products, Inc. The pertinent portion of Art. I, § 10, U. S. Constitution, reads:

"* * * No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports * * *."

The parties agree that property in the possession of an *importer* in the original form or package in which it was imported is exempt from tax. The issue is whether unsold goods, imported for sale and delivered by the importer to a consignee who is a dealer in such merchandise, retain the immunity from taxation.

The case was tried below on stipulated facts. Cominco is a Washington corporation and is the *importer.* It purchases fertilizers in Canada from its parent Canada corporation, Consolidated Mining and Smelting Company of Canada, Limited, and imports the fertilizer in bags into the United States for sale. It stores some of its imports in public warehouses in Oregon and it is conceded that this merchandise is immune from taxation. The issue arises as to the

merchandise shipped by Cominco to fertilizer dealers in seventeen Oregon counties and held by the dealers for sale under consignment agreements. All bags of fertilizer are sealed in Canada, and no bag is opened or otherwise worked upon in the United States while owned by Cominco. Since the stipulation is silent as to whether the bags are baled with rope or wire, or packaged in the process of shipment, we must assume they are not. Some bags are brought from Canada to Spokane where they are stored by Cominco and thereafter shipped to dealers, but the majority of the bags are shipped directly from Canada to the individual dealers. The bags, as to weight and content, are suitable for the customers' needs so that in the normal course of the dealers' business bags are sold without being opened.

The pertinent aspects of the consignment contract entered into by Cominco and each of its Oregon dealers are:

(1) The dealer is to diligently seek to sell the merchandise.

(2) The dealer is to keep complete records covering consigned goods and to report each month's sales to Cominco on or before the 5th day of the following month. Cominco is thereupon to bill the dealer for the previous month's sales.

(3) The dealer agrees to keep the goods stored without expense to Cominco, and Cominco may retake possession of all or part of the unsold goods at any time at its option.

(4) The dealer may store all or any portion of goods consigned to him with other dealers, providing the latter sign consignment agreements identical to those signed by him.

(5) Title to consigned goods remains in Cominco until the goods are sold by the dealer in the ordinary course of business.

"\* \* \* The design of the constitutional immunity was to prevent 'the great importing States [from laying] a tax on the non-importing States,' to which the imported property is or might ultimately be destined, which would not only discriminate against them but also 'would necessarily produce countervailing measures on the part of those States whose situation was less favourable to importation.' *Brown v. State of Maryland, supra,* at page 440. See Madison, Debates in the Federal Convention of 1787, August 28, 1787. \* \* \* The constitutional design was then to immunize imports from taxation by the importing States, and all others through or into which they may pass, so long as they retain their distinctive character as imports. \* \* \*" *Youngstown Sheet & Tube Co. v. Bowers,* 358 US 534, 545, 79 S Ct 383, 389-90, 3 L Ed2d 490.

The key decision in this field is *Brown v. State of Maryland,* 25 US (12 Wheat.) 419, 6 L Ed 678 (1827) in which the state of Maryland attempted to require all importers of foreign goods to pay a license fee for the privilege of dealing in such goods. The court, speaking through Chief Justice Marshall, held that Maryland could not exact such a fee, stating:

"\* \* \* It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution."

The plaintiff, Cominco, concedes that unless *Low v. Austin,* 80 US (13 Wall.) 29, 20 L Ed 517 (1871), or *Waring v. Mayor of Mobile,* 75 US (8 Wall.) 110, 19 L

Ed 342 (1869), is construed to so hold, no court has held that goods in the hands of the consignee of an importer retain the constitutional immunity from taxation.

In *Low v. Austin,* supra, Low and associates were importing, shipping and commission merchants in San Francisco. They had in their possession wine which was the property of Gustave Gibert of France. The wine was held for sale by Low in its original shipping cases pursuant to a consignment agreement between Gibert and Low, title remaining in Gibert. The defendant Austin, assessor of San Francisco county, sought to collect a tax on the wine. The California supreme court, in *Low v. Austin,* No. 2369, 1 Cal. Unrep. 638 (1870), held that the wine was subject to tax.

The U. S. Supreme Court reversed, citing the test laid down in *Brown v. Maryland,* supra, and stating that goods do not lose their character as imports "until they have passed from the control of the importer or been broken up by him from the original cases." 80 US at 34.

Plaintiff argues that the opinions show that Gibert, the Frenchman, and not Low was the *importer,* and that the necessary implication is—"in the hands of the importer" also means "in the hands of the consignee of the importer." It bases this argument upon a sentence appearing in the second paragraph of the California supreme court decision: "The goods had, just prior to their possession by plaintiffs, been imported by Gibert." 1 Cal. Unrep. at 638.

A review of the cases defining "importer," and of the *Low* opinions shows that Low and associates, the California merchants, were the importers, not Gibert. In *Knox v. Devens,* 14 Fed Cas 801 (No. 7905) (C.C. D.

Mass 1829), the court, in applying the revenue collection act of 1799, said:

"* * * [W]hen a person is a bona fide consignee, the liability to pay duties attaches to him as importer * * *." 14 Fed Cas at 807.

In *Baldwin v. United States*, 113 Fed 217, 218 (2nd Cir 1902), the Court of Appeals held that the person "to whom the goods are sent, and who himself presents the invoice, makes the entry, receives the bill of lading, and gets the goods" is the *importer*. To the same effect see *United States v. Mexican International R. Co.*, 151 Fed 545 (5th Cir 1907). In the *Low* case the thrust of the California court's opinion, following its apparently inadvertent use of the phrase "imported by Gibert," was that even though the merchants, Low and associates, were the importers, the goods should not be exempt from taxation.

"* * * We see no reason why imported goods, exposed in the store of a merchant for sale, do not constitute a portion of the wealth of the state as much as do domestic goods similarly situated. Nor do we see the slightest difference whether *the importer is also the merchant* who sells * * *." (Emphasis supplied.) 1 Cal. Unrep. at 643.

The synopses of the briefs of the parties before the U. S. Supreme Court appearing on pages 517 and 518 of 20 L Ed demonstrate that both parties assumed without question that the merchants, Low and associates, were the importers. Justice Field, in his opinion, states:

"* * * [T]he plaintiffs * * * are, importing, shipping and commission merchants, in the city of San Francisco * * *. In 1868, they received, on consignment from parties in France, certain champagne wines of the value of $10,000, upon which

*they paid the duties and charges* at the custom-house." (Emphasis supplied.)

He then goes on:

"The simple question  * * * is, whether imported merchandise, upon which the duties and charges at the custom-house have been paid, is subject to state taxation, whilst remaining in the original cases, unbroken and unsold, *in the hands of the importer.*" (Emphasis supplied.) *Low v. Austin,* 80 US (13 Wall.) at 32, 20 L Ed at 518.

■ The words "in the hands of the importer" in their ordinary and usual sense mean "in the possession of the importer." To interpret them so broadly as to mean goods "in the possession of a consignee of the importer" would be to disregard the language of *Brown v. Maryland,* supra, establishing the principle of strict construction of the import-export clause:

" * * * It may be conceded, that *the words of the prohibition ought not to be pressed to their utmost extent;* that in our complex system, the object of the powers conferred on the government of the Union, and the nature of the often conflicting powers which remain in the states, must always be taken into view, and may aid in expounding the words of any particular clause.  * * * *[W]e admit that sound principles of construction ought to restrain all courts from carrying the words of the prohibition beyond the object the constitution is intended to secure*  * * *." (Emphasis supplied.) 25 US 419, 439-40.

■ *Waring v. Mayor of Mobile,* 75 US (8 Wall.) 110, 19 L Ed 342, was a case in which the plaintiff was neither the shipper nor the consignee to whom salt was originally shipped. In seeking the constitutional exemption he conceded that he was not the *importer.* While the salt was in a ship enroute, he purchased it

from the consignee. The court, in holding that the salt was subject to tax, said:

"* * * [T]he court is of the opinion that the shippers or consignees were the importers of the salt, and that the complainant was the purchaser of the importers * * *." 75 US (8 Wall.) at 120, 19 L Ed at 345.

A shipper who ships goods may also be the consignee, i.e., the person to whom they are shipped. The relevant point is that the person who makes the entry, pays the duty, etc., i.e., the primary consignee—the one to whom the carrier may lawfully make delivery in accordance with its contract of carriage—is the *importer*. It is in this sense that the court used the word consignees in the *Waring* case.

Cominco cites several other cases① applying the import-export clause. All involve situations in which the goods remained in their original packages either in the warehouses of the importers or in public warehouses subject to the express directions of the importers.

We note only two cases discussing the effect of a consignment by the importer. *State ex rel H. A. Morton Co. v. Board of Review,* 15 Wis2d 330, 112 NW2d 914, and *Parrott & Co. v. City and County of San Francisco,* 131 Cal App2d 332, 280 P2d 881. Both cite the *Low* case with approval and contain dicta to the effect that a consignment by the importer terminates the exemption from taxation. Neither case actually involved a consignment by the importer.

---

① Dept. of Revenue v. James Beam Co., 377 US 341, 84 S Ct 1247, 12 L Ed2d 362; Anglo-Chilean Corp. v. Alabama, 288 US 218, 53 S Ct 373, 77 L Ed 710; Southern Pac. Co. v. City of Calexico, 288 Fed 634 (D.C. S.D. Calif. 1923) and Tricon Inc. v. King County, 60 Wash2d 392, 374 P2d 174, cert. den., 372 US 908.

Two recent U. S. Supreme Court decisions, while not precisely in point, demonstrate the court's continuing intent that the import-export clause be strictly construed. In *Youngstown Sheet & Tube Co. v. Bowers,* supra, the plaintiff imported iron ore for use in its manufacturing processes. The imported ore was kept in a separate pile on the plaintiff's premises until used. The court, citing with approval *May & Co. v. City of New Orleans,* 178 US 496, 509, 20 S Ct 976, 980, 44 L Ed 1165, said:

> "The materials here in question were imported to supply * * * the manufacturer's current operating needs. * * * [T]hey [the ore piles] stood in the same relation to the State as like piles of domestic materials * * *. In those circumstances the tax was not on 'imports,' nor was it a tax on the materials because they had been imported * * *. They were therefore subject to taxation just like domestic property that was kept in the same place in the same way for the same use. We cannot impute to the Framers of the Constitution a purpose to make such a discrimination in favor of materials imported from other countries as would result if we approved the view pressed upon us by the manufacturers." 358 US 534 at 549-50, 79 S Ct 383 at 392, 3 L Ed2d 490.

*May & Co. v. City of New Orleans,* supra, involved the "unbroken package" test. May & Co. handled imported goods only, primarily towels, linens and household goods. Towels came in packages of two, three and five dozen. These packages were never broken but in some instances the packages were removed from the large boxes in which they were shipped. The Supreme Court affirmed the right of Louisiana to tax these goods, stating:

> "The tax here in question was not in any sense a tax on imports nor a tax for the privilege of

bringing things imported into the State. It was not a tax on the plaintiffs' goods because they were imported from another country, but because at the time of the assessment they were in the market for sale in separate parcels and therefore subject to be taxed as like property, in the same condition, that had its origin in this country. We cannot impute to the framers of the Constitution a purpose to make such a discrimination in favor of property imported from other countries as would result if we approved the view pressed upon us by the plaintiffs." 178 US at 509.

■ To extend the constitutional prohibition to include goods consigned by the importer to dealers scattered throughout the state of Oregon solely for the purpose of offering said goods for sale in domestic commerce would do violence to the guidelines established by the U. S. Supreme Court for the interpretation of Art. I, § 10, U. S. Constitution.

Reversed.