Bbeitel, J.
In a proceeding (CPLR art. 78) to review a tax deficiency assessment by the New York City Finance Administrator, there are cross appeals. The assessments arose out of the petitioner importer’s failure to pay the city franchise tax measured by gross receipts from wholesale and retail sales of imported automobiles. The Federal Constitution immunizes imports from local taxation, and the Supreme Court has held *303 that the immunity continues while the import remains in its original form (U. S. Const., art. I, § 10, cl. 2; Brown v. Maryland, 12 Wheat. [25 U. S.] 419). The issue is whether the importer had so altered its automobiles as to forfeit their immunity.
The Finance Administrator sustained the findings of his hearing examiner that the importer’s receipts from sales of Citroen cars both at wholesale and retail should be included in computing the tax (5 Administrative Code of the City of New York, § B46-1.0 et seq.). A deficiency of $30,920.03, with interest, was assessed for the period July 1, 1959 through December 31, 1963. The Appellate Division unanimously modified in a memorandum and directed that the tax attributable to sales at wholesale ($18,500.25) be deducted from the assessments.
There should be an affirmance. Gross receipts from ears sold at retail were properly included within the tax base. By offering, preparing, and selling cars at retail with a large number of optional features, the importer ended their character as imports. On the other hand, sales at wholesale were properly excluded because there was no substantial alteration or preparation of the vehicles.
Petitioner, a wholly-owned subsidiary of S.A. Andre Citroen, a. French automobile manufacturer, is a New York corporation with its principal place of business in New-York City. It is the exclusive distributor of Citroen cars in the United States selling at wholesale to franchise dealers, and at retail.
The imports arrive by ship at either Brooklyn, Manhattan, or New Jersey piers. Except for a small percentage carried by transporter vehicles, all are temporarily equipped with used batteries, gas, oil, water, and portable sideview mirrors so that they may be driven to the importer’s warehouse in Brooklyn. If delivery is accepted at night, headlights are also installed. The ears are stored for unspecified periods at the warehouse to await preparation and delivery on order.
When a wholesale order is received the automobile is prepared for delivery. A new battery and headlights are installed, any body damage corrected, wheels tightened, and the carburetor adjusted. The car is not cleaned. The preparation takes from one to two hours unless extensive body damage is involved. Usual dealer preparation is not performed on these cars.
*304 When a retail order is received there is more extensive preparation, requiring 8 to 12 hours. In addition to the work performed on cars sold at wholesale, other services and products are optionally available, including, among others, radios, under coating, rust-proofing, air conditioning, and seat belts. All the products except seat belts are of American manufacture. Considerable time is spent polishing and waxing the car, touching up paint defects, installing floor mats and chrome strips, and conducting road tests. The car is then delivered by the importer to the customer for a small service fee. The local sales tax is evidently paid.
The disputed assessments involve $18,500.25 attributable to wholesale transactions, and $6,123.25 to retail sales. The discrepancy of $6,296.53 results from sales of domestic parts and accessories, and is not in dispute. The hearing officer had included receipts from all sales in applying the franchise tax. The Appellate Division modified, directing reduction of so much of the tax measured by wholesale transactions. The court reasoned that the servicing of the cars at the pier was an insuf-' ficient alteration to deprive cars sold at wholesale of local tax immunity. No mention was made of the work done at the warehouse in preparing wholesale cars for delivery.
The Federal Constitution provides that “No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws ”. (U. S. Const., art. I, § 10, cl. 2.) The Federal Government was given the exclusive right to tax imports to prevent port States from taxing the imports and exports of inland States, to raise revenue, and to preserve the prerogative of the sovereign to regulate foreign commerce (see 2 Farrand, The Records of the Federal Convention, pp. 441-442; 3 Farrand, op. cit., supra, pp. 328, 518-521; 2 Elliot’s Debates on Federal Constitution [1828], pp. 354-356; 3 Elliot’s Debates [1854], p. 483; Charles Warren, The Making of the Constitution, pp. 557-559).
The breadth of the tax immunity was first propounded in Chief Justice Marshall’s celebrated opinion in Brown v. Maryland (12 Wheat. [25 U. S.] 419, supra). In the Brown case, the State of Maryland required importers of foreign goods, by the package or bale, to pay a license tax before selling them *305 at wholesale in the form in which they were imported. In striking down the Maryland tax, the court observed that the line between the general power of the State to tax and the constitutional restriction must be marked as each case arises. Nevertheless, future inquiries were benefited by the following general principle: “ [W]hen the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution. ’ ’ (id., pp. 441-442). At least, two points were made clear by the Brown decision. First, one who imports for sale has by payment of the customs duty acquired the right to sell the goods free from State taxation. Certainly this is true so long as the article remains in the importer’s warehouse in the form or package in which it was imported. Second, any form of tax, whether a direct or indirect exaction upon the imported article as such, is proscribed.
To begin with, it would appear from the decided cases that not all franchise taxes which have an impact on imports or importers are forbidden. Taxing statutes employ various factors for assessing the value of the franchise. Some measure the tax by the capital of a corporation or its dividends, and in such instances the courts have held that although imports and exports are affected they do not violate the Constitution (New York v. Roberts, 171 U. S. 658, 664, affg. 149 N. Y. 608; Home Ins. Co. v. New York, 134 U. S. 594, 598-605; People ex rel. Klipstein & Co. v. Roberts, 36 App. Div. 597, 598-599, affd. 167 N. Y. 617; cf. St. Louis S. W. Ry. v. Arkansas, 235 U. S. 350, 364-366; compare Anglo-Chilean Corp. v. Alabama, 288 U. S. 218, 225-226, and dis. opn. at pp. 229, 231-236). Where, as is true in this case, the tax is measured by the property imported or exported, or by its proceeds, it is an impost in effect if not in form (Richfield Oil Corp. v. State Bd., 329 U. S. 69, 80, 83-85; cf. Canton R. R. Co. v. Rogan, 340 U. S. 511, 513-515; see Ann., Imports — State Taxation, 89 L. Ed. 1279, 1293; Ann., Tax on Corporations—Import Clause, 20 ALR 2d 152, *306 154-159; see, also, Ann., Foreign Corporations — Taxation— Commerce Clause, 105 A. L. E. 11, 22-32; Ann., Foreign Corporations— Taxation — Commerce Clause, 139 A. L. E. 950). Consequently, the present assessment under the city gross receipts franchise tax is invalid unless at the time imposed the importer’s cars ceased to be imports as a result of work performed and installations made, either at the piers, or at the warehouse in anticipation of delivery in wholesale or retail transactions.
The cars sold at retail lost their character as imports, and receipts from such sales were properly included in computing the franchise tax. Of critical significance is that these cars are directly available to the retail customer with a large number of accessories and services. In the event optional features are required, and it is rare when this is not the case, the installation is made prior to delivery and usually at the importer’s warehouse. Because the importer offers and “ commingles ”, domestically, optional features into the import, it does not preserve the automobile’s “ distinctive character as an import ” (Brown v. Maryland, 12 Wheat. [25 U. S.], at p. 442, supra). As with the original package doctrine a line must be drawn, sometimes arbitrarily, beyond which the tax immunity will not extend (see, e.g., May v. New Orleans, 178 U. S. 496, 509). Most important, the distinction made in this case comports with the business actualities and is economically supportable in separating imports still in the flow of international commerce from those which have come to rest, and are being treated by their owners as property at rest to be modified as they wish.
Cars sold by the importer at wholesale are in a different category. True, batteries, wipers, and' rearview mirrors are installed. But the wipers and mirrors are factory-made parts, only removed from the cars during ocean shipment to avert theft. As a precaution, batteries are not installed prior to shipment. In an analogous case, a Federal court has held that a temporary change in form to facilitate transportation of an import does not extinguish the tax immunity (Standard-Triumph Motor Co. v. City of Houston, 220 F. Supp. 732, judgment vacated on jurisdictional grounds, 347 F. 2d 194, cert. den. 382 U. S. 974; see, also, Southern Pac. Co. v. City of Calexico, 288 F. 634, 643; Mexican Petroleum Corp. v. Louisiana Tax Comm., *307 173 La. 604). Other than batteries, sealed beam headlights of American manufacture are the only nonfactory parts installed by the importer. No extra charge is imposed. This is, by all practical tests, a minor modification in the condition of the imported automobile and should not suffice to dissipate the import immunity. It has been held that whether an import has been so acted upon as to lose its tax immunity must be assessed in a practical way (Youngstown Go. v. Bowers, 358 U. S. 534, 545). If the immunity were lost by the merest physical change, the immunity, at least with respect to imported automobiles, would be without vitality, especially when one considers the complications of ocean transportation and the need for compliance with domestic automobile safety statutes.
The holding by the Supreme Court in Gulf Fisheries Co. v. MacInerney (276 U. S. 124), heavily relied upon by the city, does not compel a contrary result. The case involved the processing of imported, freshly-caught fish, some of which were only washed and packed in ice. True, there is language suggesting that the mere washing of the fish was a change in their ‘‘ original condition ’ ’, but the legal significance of such a change was not reached. The decision, in fact, turned on the act of removing the fish in bulk from the fishing vessels, processing them at least to some degree, and repacking them in separate barrels. When viewed as an application of the ‘ ‘ original package ’ ’ doctrine, the case loses much of its significance for nonpackage cases.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur.
Order affirmed.