GEORGE W. WILSON, GEORGE WILSON & ASSOCIATES, INC., AND A. E. FINLEY & ASSOCIATES OF VIRGINIA, INC., TRADING AS WILSON-FINLEY COMPANY, A PARTNERSHIP, AND WILSON PARTS & EQUIPMENT COMPANY v. COUNTY OF WAKE

No. 7310SC538

(Filed 10 October 1973)

1. Taxation § 9.5— import tax — entire shipment as original package

Where plaintiff, a wholesale distributor of undercarriage parts for crawler-type vehicles, imported some of his parts from Europe, stockpiled them in the condition in which they were imported in warehouses of his own and of the N. C. Ports Authority, and then sold the parts to customers directly from the stockpiles, an entire shipment of parts did not constitute the "original package" for purposes of taxation by the defendant, and the original package was not broken by the sale of any one package or pallet out of a shipment.

2. Taxation § 9.5— imports sorted and stacked — immunity from taxation unaffected

The goods in the case at bar which were stored in the original packages or pallets by the plaintiff in the same form and condition in which they were imported were not acted on in any way so as to cause the unsold portion of the unbroken packages to lose their immunity from taxation, even though plaintiff did sort and stockpile the goods in warehouses.

3. Taxation § 9.5— import tax forbidden — discrimination irrelevant

With respect to local duties on imports, it is not a discriminating tax that is forbidden, but any impost or duty whatever; therefore,

defendant's claim that its ad valorem tax was an equal tax on all goods and not an impost on imports is without merit.

APPEAL by defendant from *Hobgood, Judge,* Second February 1973 Session of WAKE Superior Court.

The plaintiff, Wilson-Finley Company, was and is engaged in business as a wholesale distributor of undercarriage parts for crawler-type vehicles. Some of these parts are purchased from three European manufacturers and are for resale in the United States. They are imported into the United States through the Port of Wilmington, North Carolina. Import duties are paid to the United States of America on all of such parts except those deemed exempt from such duties as agricultural equipment.

Upon arrival at the Port of Wilmington, the imported parts are unloaded from ships by the North Carolina Ports Authority; some of said parts are immediately loaded for shipment by common carrier to plaintiff's storage facilities; and other parts are stored in Ports Authority warehouses for a period of three or four days awaiting arrival of common carrier for transport to plaintiff's storage facilities. These storage facilities are located at 5313 Hillsborough Street, Raleigh, Wake County, North Carolina. An import shipment usually includes many different parts which, on occasion, are loaded by common carrier for transportation to plaintiff's storage facilities on a random basis; that is, several different types of imported parts may be loaded on one carrier.

The imported parts vary in size and weight and arrive at the plaintiff's storage facilities as prepared for shipment by the foreign manufacturer in methods as follows:

(1) Small items such as Roller Seal Kits and Pin and Bushing Groups are shipped several in a wooden crate or box.

(2) Parts such as Grouser Shoes, Sprocket Segment Groups, and Rollers are shipped several bound together as a unit by steel bands or bolted together, with a wooden pallet sometimes used for ease of handling.

(3) Large items such as Sprocket Rims, Rollers and Idlers, Track Chains, and Shovel Pads are shipped as separate and individual parts.

Upon arrival at plaintiff's storage facilities, the imported parts are sorted by plaintiff's employees and are stockpiled,

along with similar items previously imported, in neat stacks or piles or separate bins or boxes in the original form or condition in which they were imported. The imported parts remain so stockpiled as a part of plaintiff's inventory until such time as sold to a customer.

On occasion it becomes necessary for plaintiff to break a package or pallet to fill an order. When this situation arises, the excess from the broken package is placed in plaintiff's "component" inventory and its taxability is not contested by plaintiff. The inventory of "component" parts and domestic parts are stored together in the front part of the warehouse and are kept separate from the imported parts which are stockpiled in the rear of the same building in the original form or condition in which they were imported.

The plaintiff, Wilson Parts & Equipment Company, participates in the financing of the undercarriage parts imported by the plaintiff, Wilson-Finley Company, and as between the plaintiffs, each owns an undivided interest in the inventory of such parts maintained by plaintiff, Wilson-Finley Company.

On or about December 21, 1971, the plaintiffs paid to the Wake County Tax Supervisor ad valorem taxes assessed solely on the item of inventories in amounts as follows:

| | |
|---|---|
| Wilson-Finley Company | $13,095.27 |
| Wilson Parts & Equipment Company | $ 2,914.68 |

On or about January 12, 1972, and within thirty (30) days after such payment of ad valorem taxes, the plaintiffs submitted to the governing body of Wake County a written statement setting forth a defense to payment of part of such tax and claiming refunds of tax paid in amounts as follows:

| | |
|---|---|
| Wilson-Finley Company | $11,611.54 |
| Wilson Parts & Equipment Company | $ 1,880.00 |

The defense set forth by plaintiffs in support of the requested refunds was that part of their respective inventories on January 1, 1971, consisted of imported undercarriage parts which were stockpiled in the original form or condition in which imported and that under Article I, Section 10, Clause 2 of the Constitution of the United States (Import-Export Clause) such part of their inventories was exempt from the ad valorem tax levied by the defendant, Wake County.

Based on the foregoing facts the trial court found that all the imported goods held in inventory by the plaintiffs in their original form or condition were exempt from the ad valorem tax levied by the defendant Wake County. Defendant appealed, contending that the manner in which the imported articles are shipped, and the handling and use to which they are put by the plaintiffs upon their arrival in this country causes the articles to lose their character as imports and thus to be subject to local taxation.

*Poyner, Geraghty, Hartsfield and Townsend by N. A. Townsend, Jr. and Paul E. Castelloe for plaintiff appellees.*

*Wake County Tax Attorney J. Bourke Bilisoly and Wake County Attorney Edwin N. Kearns for defendant appellant.*

CAMPBELL, Judge.

Article I, Section 10, Clause 2 of the United States Constitution provides:

> "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws, and the net Produce of all Duties and Imposts laid by any State on Imports or Exports shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress."

[1] The United States Supreme Court interpreted this constitutional provision in *Brown v. State of Maryland*, 25 U.S. (12 Wheat.) 419, 6 L.Ed. 678 (1827). The court held that the right to import necessarily implies the right to sell. The court went on to say:

> "[T]here must be a point of time when the prohibition ceases, and the power of the State to tax commences. . . . It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too

plainly a duty on imports to escape the prohibition in the constitution."

The defendant, Wake County, contends that an entire shipment, *e.g.*, the hold of the ship, constitutes the original package. Defendant cites *E. J. Stanton & Sons v. Los Angeles County*, 78 Cal. App. 2d 181, 177 P. 2d 804 (1947), *cert. denied*, 332 U.S. 766, 68 S.Ct. 75, 92 L.Ed. 352 (1947) ; *Volkswagen Pacific, Inc. v. City of Los Angeles*, 7 Cal. 3d 48, 496 P. 2d 1237 (1972) ; and *Mexican Petroleum Corp. v. City of South Portland*, 121 Me. 128, 115 A. 900, 26 A.L.R. 965 (1922). In each of these cases except the *Volkswagen, supra,* case, the goods were incapable of packaging and fungible, it being impossible to distinguish which pieces of lumber or which gallon of oil was part of the original shipment. Such is not the case here, even with the unpackaged items. In the case of *Florida Greenheart Corp. v. Gautier*, 172 So. 2d 589 (Florida cases) (1965), *cert. denied*, 382 U.S. 825, 86 S.Ct. 56, 15 L.Ed. 2d 70 (1965), the Florida Supreme Court expressly rejected the *Stanton* decision and held that each piece of lumber rather than the entire shipment constituted the original package. In *Garment Corp. v. Tax Comm.*, 32 Mich. App. 715, 189 N.W. 2d 72 (1971), *cert. denied*, 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed. 2d 544 (1971), the Michigan Court of Appeals held that cartons of industrial garments and not the shipping vans were the original package. Several cases have been decided on the grounds that the goods have not been so acted on as to lose their immunity, and in each case it had to have been assumed that the original package was not the entire shipment. *Citroen Cars Corp. v. City of New York, Dept. of Fin.*, 30 N.Y. 2d 300, 283 N.E. 2d 758 (1972) ; *Standard-Triumph Motor Co. v. City of Houston, Texas*, 220 F. Supp. 732 (S.D. Texas, 1963), vacated on other grounds, 347 F. 2d 194 (1965), *cert. denied*, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed. 2d 466 (1966) ; *Emhart Corporation v. Town of West Hartford*, 28 Conn. Supp. 134, 253 A. 2d 670 (1968) ; *Sterling Liquor Distributors, Inc. v. County of Orange*, 3 Cal. App. 3d 510, 83 Cal. Rptr. 571 (1970), *cert. denied*, 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed. 2d 50 (1970) ; *Tricon, Inc. v. King County*, 60 Wash. 2d 392, 374 P. 2d 174 (1962), *cert. denied*, 372 U.S. 227, 83 S.Ct. 679, 9 L.Ed. 2d 714 (1963) ; *Anglo-Chilean Nitrate Sales Corp. v. Alabama*, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710 (1933), and *Department of Revenue v. Beam Distilling Co.*, 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed. 2d 362 (1963). We hold that on the facts of this case that the entire shipment is not the "original package" and that the original

package has not been broken by selling any one package or pallet out of the shipment.

[2] Defendant contends that even if the original package is unbroken that by separating and stacking the imported goods that they have been so acted on as to lose their immunity because they have been put to the use for which they were imported. *Hooven & Allison Co. v. Evatt,* 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945). Defendant cites for authority *Youngstown Sheet and Tube Co. v. Bowers* and *U. S. Plywood Corporation v. City of Algoma,* 358 U.S. 534, 79 S.Ct. 383, 3 L.Ed. 2d 490 (1959), and *In Re Publishing Company,* 281 N.C. 210, 188 S.E. 2d 310 (1972). These cases, however, involved importation for manufacture and the "current operational needs" doctrine and as such do not apply to the case at bar. Defendant also cites *Thyssen Steel Corp. v. Michigan Tax Commission,* 38 Mich. App. 363, 196 N.W. 2d 325 (1972), where goods imported for sale lost their exempt status. *Thyssen, supra,* however, is distinguishable because there the importer of coiled steel decoiled and treated the steel for oxide scale to correct such defect and restore the coils to marketable status. The goods in the case at bar which are stored in the original packages or pallets by the plaintiff in the same form and condition in which they are imported have not been acted on in any way so as to cause the unsold portion of the unbroken packages to lose their immunity. See *Citroen Cars Corp. v. City of New York, Dept. of Fin., supra,* and *Standard-Triumph Motor Co. v. City of Houston, Texas, supra.* The sorting and stockpiling of imported items in preparation for sale does not, by itself, cause the goods to lose their exempt status. *Florida Greenheart Corp. v. Gautier, supra.*

[3] Finally, defendant claims that since the Wake County ad valorem tax is an equal tax on all goods, that it is not an impost on imports. This argument was laid to rest over a century ago in *Low v. Austin,* 80 U.S. (13 Wall) 29, 20 L.Ed. 517 (1872) where the court said: "It is not a discriminating tax that is forbidden, but any impost or duty whatever."

Affirmed.

Judges MORRIS and BALEY concur.