STATE EX REL. H. A. MORTON COMPANY, Respondent, v. BOARD OF REVIEW OF CITY OF MILWAUKEE, Appellants.

*November 29, 1961—January 9, 1962.*

For the appellants there was a brief by *John J. Fleming,* city attorney, and *John F. Kitzke,* assistant city attorney, and oral argument by *Mr. Kitzke.*

For the respondent there was a brief by *Michael J. Dunn* and *Carl F. Schetter,* both of Milwaukee, and oral argument by *Mr. Schetter.*

BROADFOOT, C. J.   The issue here is whether merchandise imported for sale and kept on hand by the importer-wholesaler to meet current or anticipated business demand is pro-

tected by sec. 10, art. I, clause 2 of the United States constitution from the *ad valorem* personal-property tax.

In *United States Plywood Corp. v. Algoma,* 2 Wis. (2d) 567, 87 N. W. (2d) 481, 358 U. S. 534, 79 Sup. Ct. 383, 3 L. Ed. (2d) 490, the United States supreme court affirmed the decision of this court and held that materials imported for use in manufacturing and stockpiled to supply the manufacturer's current operating needs were so taxable. The high court determined that the manufacturer had so acted upon the imported materials as to cause them to lose their distinctive character as imports by irrevocably committing them to use in manufacturing, the purpose for which they were imported.

The appellants here urged that the principles set forth in the *United States Plywood Corp. Case, supra,* be applied to the facts in this case. They contend that the following questions embrace the crux of that decision and that all four must be answered in the affirmative here:

1. Has the importation journey definitely ended?

2. Are the goods imported necessarily required to be kept on hand to meet the current needs?

3. Are the goods actually being used to supply the need?

4. Are indiscriminate portions of the whole actually being used to supply the daily operating needs?

It is not necessary to consider these contentions because the United States supreme court has to the present recognized, as must we, a distinction between goods imported for sale and goods imported for use in manufacturing. Beginning with *Brown v. Maryland,* 25 U. S. (12 Wheat.) 419, 6 L. Ed. 678, that court has held that the import-export clause of the constitution protects goods imported for sale while they are in their original packages and have not been sold or used by the importer. "Use" by the importer of such goods does not include their storage preparatory to sale.

Storage does not cause the goods to lose their character as imports. This is true even if the goods, such as the liquor here, will only be sold for delivery in Wisconsin.

In the *United States Plywood Corp. Case, supra,* the United States supreme court modified the "original package" doctrine of the *Brown Case, supra,* as to unopened stocks of goods imported for use in manufacturing. However, it clearly indicated that it was not abolishing the "original package" doctrine as applied to unopened stocks of goods imported for sale:

"Whatever may be the significance of retaining in the 'original package' goods that have been so imported for sale [cases cited], goods that have been so imported for use in manufacturing are not exempt from taxation, though not removed from the 'original package,' if, as found here, they have been 'put to the use for which they [were] imported.' " (358 U. S. 548.)

It may be argued that an *ad valorem* property tax should be allowed because the tax is not directed toward imports as such and consequently the goods imported are not subjected to any burden as a class. Rather, the imported goods are subjected equally with other domestic property in the state to the tax. This argument was answered in *Low v. Austin,* 80 U. S. (13 Wall.) 29, 34, 20 L. Ed. 517:

"But the obvious answer to this position is found in the fact . . . that the goods imported do not lose their character as imports, and become incorporated into the mass of property of the state, until they have passed from the control of the importer or been broken up by him from their original cases. Whilst retaining their character as imports, a tax upon them, in any shape, is within the constitutional prohibition. The question is not as to the extent of the tax, or its equality with respect to taxes on other property, but as to the power of the state to levy any tax. If, at any

point of time between the arrival of the goods in port and their breakage from the original cases, or sale by the importer, they become subject to state taxation, the extent and the character of the tax are mere matters of legislative discretion."

It is suggested by appellants that the Twenty-First amendment to the United States constitution permits taxation in this case. The argument is made that since that amendment has given the state control over importation of liquor for use and sale solely within the state, the state can tax the liquor. This ignores the fact that under the authorities cited above the protection afforded imported liquor here has not ceased. The liquors are still imports and are protected by the import-export clause. The Twenty-First amendment is not inconsistent with the import-export clause and does not repeal it in so far as intoxicating liquors are concerned. *Parrott & Co. v. City and County of San Francisco,* 131 Cal. App. (2d) 332, 280 Pac. (2d) 881.

It is our determination that: (1) The liquor imported directly by the Morton Company, whether inside or outside of the bonded-warehouse area, not sold or consigned, and still in the original, unopened cases or containers, cannot be taxed; (2) the liquor imported by the Morton Company is taxable if the original cases or containers in which it arrived have been opened even though it had not been sold or consigned; (3) the liquor imported by Twenty-One Brands and sold to the Morton Company is subject to the tax.

Some of the merchandise was improperly assessed. This requires that the entire assessment be set aside. That properly taxable may be reassessed by the proper authorities of the city of Milwaukee as omitted property. See *Central Cheese Co. v. Marshfield,* 13 Wis. (2d) 524, 109 N. W. (2d) 75. The judgment declared that the entire challenged

assessment was null and void. The record does not support that statement.

*By the Court.*—Judgment modified to conform to this opinion and, as so modified, it is affirmed.

GORDON, J., took no part.