## 29171. WAGES et al. v. MICHELIN TIRE CORPORATION.

GUNTER, Justice.

This appeal involves a complicated federal constitutional question. Gwinnett County, Georgia assessed an ad valorem tax against Michelin's inventory

held in its warehouse on January 1, 1972, and January 1, 1973. Michelin contended that the imposition of the tax by the county violated Art. I, Sec. 10, Clause 2 of the Federal Constitution, which states in part: "No state shall, without the consent of the Congress, lay any imposts or duties on any imports or exports, except what may be absolutely necessary for executing its inspection laws . . ." Code § 1-135. The trial court agreed with Michelin, declared the assessments void, and permanently enjoined the county's tax commissioner from collecting the tax. The appellants have come here seeking reversal.

Michelin Tire Corporation is a New York corporation qualified to do business in Georgia. It is an importer and wholesaler of automobile and truck tires and tubes. It operates a distribution warehouse in Gwinnett County, Georgia, and the inventory at the warehouse consists primarily of tires and tubes imported from foreign countries, although on both tax dates in question some domestic tubes were stored at the warehouse. Michelin pays a four percent import duty on all of its imports.

Imported tires and tubes are shipped to the warehouse by two methods of transportation. Some are delivered in over-the-road trailers, and the trailers are packed and sealed at the foreign factory and are delivered by common carrier directly to the warehouse. The remainder are transported in sea vans, which are basically over-the-road trailers with removable wheels. The vans are packed and sealed at the foreign factory; they are hauled to a port where the wheels are removed; they are transported by ship to a port of entry, where they are loaded off the ship and wheels are replaced; and they are transported to the warehouse. The vans usually arrive at the warehouse within a week of arrival at the port of entry. Michelin does not own any of the trailers or vans, and there is no intermediate distribution point on any of the shipments.

Imported tires are packed into the vans and trailers in bulk, without any packaging or bundling. Each tire is distinguishable by a serial number. Upon arrival at the warehouse, each trailer or van load is unloaded and sorted so that the individual shipments are no longer separate

identifiable units. The tires are stacked on wooden pallets and stored in the warehouse, segregated by size and style, awaiting sale to retail dealers. The individual tires are not treated or altered in any manner.

Imported tubes are individually packaged in small boxes, and the boxes are transported in corrugated cartons measuring sixteen inches by twenty inches by twenty-four inches. The shipments of tubes are sorted upon arrival at the warehouse and cease to be separately identifiable units. The cartons of tubes are stored, segregated by size, in an area of the warehouse called the "full case" area. When it becomes necessary to open a carton, it is removed to an area called the "shelf area," where the individually boxed tubes are placed on shelves and held available for sale in small quantities. Michelin concedes that the tubes in the shelf area are taxable.

Domestic tubes are similarly packaged and similarly handled at the warehouse. Unopened cartons are stored in the full case area but apart from the foreign cartons. Open cartons are removed to the shelf area.

All the tires and tubes in the Gwinnett warehouse are sold to franchised Michelin dealers in six southeastern states. There are 250 to 300 such dealers who submit their orders, and Michelin makes delivery by common carrier or on a customer pickup basis. The orders vary in size and may be filled from any shipment from the manufacturer and from any pallet or carton, depending upon the size and styles ordered. No tires are sold directly to retail customers.

This case involves a question of first impression in Georgia, and we have examined in detail the pertinent cases of the Supreme Court of the United States as well as some of the leading cases from other states on the subject. A summary of these cases follows.

Brown v. Maryland, 25 U. S. (12 Wheat.) 419 (6 LE 678) (1827). This case, to this date, dominates every discussion of state taxation of imports. Maryland had a statute requiring all importers of goods by "bale or package" and all wholesalers of such imported goods to take out a license and pay a $50 fee. Brown was indicted for selling dry goods in the package in which they were imported without having a license. Chief Justice

Marshall held that the license fee imposed on importers was equivalent to a tax on the imports. He then turned to the question of how to determine when imports lose their character as such and become taxable by the states. Maryland argued that goods ceased to be imports as soon as they enter this country, but Chief Justice Marshall rejected that argument and found the Maryland statute unconstitutional. He set the following tentative guidelines: "The constitutional prohibition on the states to lay a duty on imports, a prohibition which a vast majority of them must feel an interest in preserving, may certainly come in conflict with their acknowledged power to tax persons and property within their territory. The power, and the restriction on it, though quite distinguishable, when they do not approach each other, may yet, when the intervening colors between white and black, approach so nearly, as to perplex the understanding, as colors perplex the vision in marking the distinction between them. Yet the distinction exists, and must be marked as the cases arise. Till they do arise, it might be premature to state any rule as being universal in its application. It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the Constitution . . . This indictment is against the importer, for selling a package of dry goods in the form in which it was imported, without a license. This state of things is changed if he sells them, or otherwise mixes them with the general property of the state, by breaking up his packages, and traveling with them as an itinerant peddler. In the first case, the tax intercepts the import, as an import, in its way to become incorporated with the general mass of property, and denies it the privilege of becoming so incorporated until it shall have contributed to the revenue of the state. It denies to the importer the right of using the privilege

which he has purchased from the United States, until he shall have also purchased it from the state. In the last cases, the tax finds the article already incorporated with the mass of property, by the act of the importer." P. 441.

This language has become the basis of the "original package doctrine" under which, in case after case, the power of the states to tax imports has been said to turn on whether the importer has physically altered the packaging of imported goods.

Low v. Austin, 80 U. S. (13 Wall.) 29 (20 LE 517) (1871). California imposed an ad valorem tax on French champagne stored by the importer, pending sale, in a warehouse in the original cases in which it was imported. The court unanimously held the tax unconstitutional, saying: "The goods imported do not lose their character as imports, and become incorporated into the mass of property of the state, until they have passed from the control of the importer or been broken up by him from their original cases."

May & Co. v. New Orleans, 178 U. S. 496 (20 SC 976, 44 LE 1165) (1900). May was an importer of dry goods sold in part on order and in part out of stock. The imported goods were always packaged by the foreign manufacturer in small parcels, and the parcels were packed for shipment in cartons, crates or bales. In making sales to customers, May never broke open the small parcels but sometimes broke the shipping packages in order to sell in smaller quantities. New Orleans imposed a property tax on those items held for resale and no longer in the shipping packages. The question in the case was whether the "original package" for constitutional purposes was the shipping package or the individual wrapper. The importer argued for the individual wrapper, and the city argued for the shipping package. A majority of the court (5-4) accepted the city's position and held the tax constitutional. The majority found the shipping packages to be the "original packages" within the meaning of Brown v. Maryland, supra.

Gulf Fisheries Company v. MacInerney, 276 U. S. 124 (48 SC 227, 72 LE 495) (1928). This case involved the taxability of raw fish landed on U. S. shores in fishing boats. The court held that the fish lost their distinctive

character as imports soon after coming ashore, when they were washed, iced, and packaged in bulk for sale to wholesalers.

Anglo-Chilean &c. Corp. v. Alabama, 288 U. S. 218 (53 SC 373, 77 LE 710) (1933). Alabama imposed an annual franchise tax based on the value of goods in stock. The tax was held unconstitutional as applied to an importer who was engaged in landing, storing, and selling nitrate in the manufacturer's one hundred pound bags. The original package was not an issue in the case but was assumed to be the individual one hundred pound bag.

Hooven & Allison Co. v. Evatt, 324 U. S. 652 (65 SC 870, 89 LE 1272) (1945). Ohio assessed for state ad valorem taxes bales of hemp held by a manufacturer-importer in its factory warehouse preliminary to use in the manufacturing process. The record in the case did not show how much, if any, of the taxed inventory was necessary to meet "current operational needs" of the plant. The court expressly reserved decision as to whether inventory held for current operational needs could be taxed and held that, in general, goods imported for use in manufacturing are not taxable as long as they remain in the hands of the manufacturer-importer and in the original package. The court expressly adopted (5-4) the "original package doctrine" as the primary test in the "import for use" context.

Youngstown Sheet &c. Co. v. Bowers and United States Plywood Corp. v. City of Algoma, 358 U. S. 534 (79 SC 383, 3 LE2d 490) (1959). These two cases, decided together, expressly raised the issue reserved in Hooven & Allison Co., supra. Youngstown and U. S. Plywood were both importer-manufacturers. Youngstown imported iron ore and stored approximately a three-month supply in ore yards adjacent to the furnaces. The daily ore needs were taken from the yards and conveyed to stock bins, from which the ores were fed into the furnaces. Ohio assessed an ad valorem tax on the ore in the ore yards. U. S. Plywood imported green lumber in bulk and wood veneers in bundles. Both the wood and the veneers were stored in yards adjacent to the plants. The wood was stacked to facilitate drying and from time to time taken to a kiln,

where drying was completed. The veneers were kept in piles, separated as to species, and remained in the original bundles until removed as needed for use in the plant. Algoma imposed an ad valorem tax on the wood and veneers. In both of these cases the court held the tax levies constitutional on the ground that the record showed that the entire inventories in question were irrevocably committed to the manufacturing process and therefore had been "used." The court found the original package doctrine inapplicable in this context. The court restated Chief Justice Marshall's test as follows: "He held that the goods lose their character as imports when the importer (1) 'sells them,' or (2) 'breaks up his packages, and travels with them as an itinerant peddler' . . . More important to the question confronting us, he also held (3) that goods brought into this country by an importer 'for his own use' and here 'used' by him are to be regarded as part of 'the common mass' of property and are not immune from state taxation." P. 541.

Although Hooven & Allison Co. was distinguished on its facts, in practical effect, we conclude that it was overruled.

Dept. of Revenue v. James B. Beam Distilling Co., 377 U. S. 341 (84 SC 1247, 12 LE2d 362) (1964). Kentucky imposed an ad valorem tax on scotch whiskey while it was held by the importer in its warehouse in the original packages in which the whiskey was shipped. The issue in the case was whether the Twenty-First Amendment changed the import-export clause as to liquor. The court held that it did not and found the tax unconstitutional. This decision, by implication, reaffirmed (a) the original package doctrine in the context of imports for sale, and (b) the rule that ad valorem taxes fall under the constitutional prohibition.

American Mannex Corp. v. Cronvich, 251 La. 1014 (207 S2d 778) (1968). American imported tubular steel oil well casings. Shipments were ordered from Canadian manufacturers and shipped under bill of lading to a warehouse in Louisiana. Upon arrival, each shipment was unloaded, sorted and stored with previous shipments. On rare occasions, shipments purchased from within the United States were stored in the same warehouse. The

question was whether the original package was each entire shipment or each casing. The court held (p. 1026): "We have no hesitancy in concluding, under the facts of this case, that the original packages of casings imported by plaintiff comprised all casings covered by the bills of lading and that, when those casings or joints were stored in the warehouse and assorted with other tubing of like dimension and quality, they were commingled and, in reality, formed part of the retail importer's inventory, thus becoming irrevocably committed to the purpose for which they were ultimately destined, i. e., sale and disposal by plaintiff, under the ruling in the Youngstown case. In any case, when a portion of the shipment was sold at retail to the plaintiff's customers, all of the joints covered in the bill of lading, which we regard factually, as well as fictitiously, as the original package, lost their previous status as imports and became subject to local taxation."

Volkswagen Pacific v. City of Los Angeles, 7 Cal. 3d 288 (496 P2d 1237) (1972). Volkswagen imported autos and auto parts for resale to franchise dealers. The parts were separately packaged and were transported in sea vans. The cars were imported in groups but were not packaged. The court held:

(a) As to the parts, that removal from the sea van is not necessarily the incident that gives rise to taxability by the states, because removal from the sea vans may be necessary to permit further shipment of items to sales outlets in interior states. But where, as here, the individual items were removed from the vans for the purpose of permitting Volkswagen to make sales from the warehouse as wholesalers, then the items have lost their immunity even though they remained in the manufacturer's packaging.

(b) As to the cars, they were taxable. Where packaging is inherently impossible or impracticable, an imported, unpackaged item loses its immunity from state or local taxation when it is removed from an aggregate of other similar unpackaged items imported as a unit with it.

E. J. Stanton & Sons v. Los Angeles County, 78 Cal. App. 2d 181 (177 P2d 804) (1947), cert. den. 332 U. S. 766

(1947). Stanton was a wholesale and retail lumber dealer who imported raw lumber in bulk. The lumber was transported in ships without packaging and was delivered directly to the dealer's lot. There, each shipment was stored separately but was sorted and graded to facilitate eventual sale. From time to time, a given shipment would be broken either by sale of a portion or by commingling a portion with remnants of other shipments. Los Angeles County imposed an annual ad valorem tax on that portion of each broken shipment held by the dealer on the tax date but did not tax those shipments which remained intact. The California Court of Appeals upheld the tax. The question was whether the original package was each board or each shipment. The court held:

(a) That, for material shipped in bulk, the shipment is the package, and

(b) That such shipments become incorporated into the taxable mass of property when any part of a shipment is sold or commingled with other shipments held for sale.

Tri-Con, Inc. v. King County, 60 Wash. 2d 392 (374 P2d 174) (1962), cert. den. 372 U. S. 908 (1963). This case involved an ad valorem tax on the inventories of two importers of goods for resale. One imported steel products and the other imported glass products. Both held their products in the warehouse in the original bundle, reel, crate or package until the time of resale. The question was whether Youngstown and U. S. Plywood had modified the original package doctrine with respect to goods imported for resale. The county argued that, under those cases, the imports became taxable when they became a part of the importers' current inventory of goods held for sale. The court rejected this argument and disallowed the tax.

Wilson v. County of Wake, 19 N. C. App. 536 (199 SE2d 665) (1973). The county imposed an ad valorem tax on the inventory of an importer-wholesaler of undercarriage parts for crawler-type vehicles. Some parts were imported in wooden crates, some in bundles, and large ones as individual items. Upon arrival at the warehouse, the parts were sorted and stockpiled with previous shipments preliminary to sale. When it became necessary to break any package, the remains of the package were removed to a separate area of the

warehouse. That such remains were taxable was admitted. On these facts, the court held the tax unconstitutional as applied to those items which remained in the condition in which they were shipped. More specifically, the court held: (a) that an entire shipment was not the original package and that the original package was not broken when one portion of a shipment was sold; and (b) that sorting and stockpiling of the components of any shipment did not cause them to lose their character as imports.

Florida Greenheart Corp. v. Gautier, 172 S2d 589 (Fla. 1965), cert. den. 382 U. S. 825 (1965). A county imposed a tangible personal property tax on inventories of lumber and pilings imported for resale. Upon arrival at the importer's yard, each shipment was sorted and stacked according to existing orders or according to type of lumber. Shipments did not remain identifiable units but were commingled with other similar imports held for resale. The question was whether the shipment or the individual piece of lumber was the original package. The court noted that the Brown test spoke of goods in the original "form" or "package." The court held that the lumber could not be taxed until after it was sold by the importer.

Michigan State Tax Comm. v. Garment Corp. of America, 32 Mich. App. 715 (189 NW2d 72) (1971), cert. den. 404 U. S. 992 (1971). This case merely held that garments packaged in cartons which were shipped by sea van remained in the "original package" as long as they were in the cartons even though the cartons had been removed from the van.

Citroen Cars Corp. v. City of New York, 30 N. Y. 300 (332 NYS2d 882) (1972). This case involved a franchise tax based on sales volume. Citroen imported automobiles which were delivered to a New York warehouse. The cars were sold both at wholesale and retail. Those sold at wholesale received minor preparations such as installation of a new battery, but were not cleaned and did not receive normal dealer preparation. Those sold at retail were fully cleaned and prepared and, frequently, were modified by the addition of American-made options. The court found the strict "original package" test in-

applicable, and it held that the franchise tax could be applied to retail sales but not to wholesale sales. The court's reasoning turned on the commercial realities of the importers' situation, and it said: "As with the original package doctrine a line must be drawn, sometimes arbitrarily, beyond which tax immunity will not extend. (See e. g., May v. New Orleans, 178 U. S. 496, 509 [20 SC 976, 44 LE 1165]). Most important, the distinction made in this case comports with the business actualities and is economically supportable in separating imports still in the flow of international commerce from those which have come to rest, and are being treated by their owners as property at rest to be modified as they wish . . . . If the immunity were lost by the merest physical change, the immunity, at least with respect to imported automobiles would be without vitality, especially when one considers the complications of ocean transportation and the need for compliance with domestic automobile safety statutes." P. 306.

In the case at bar the appellants argue that an annual ad valorem tax is not a tax on imports within the meaning of the federal constitutional provision. We reject this argument on the basis of the above-cited authority.

The appellants also argue that the "original package" is the sea van so that the imports lose their character as such when removed from the van. We likewise reject this argument. Sea vans are a normal means of transportation available through common carriers. To make the act of unloading the imports from the carrier a "breaking of the original package" is to make it impossible for importers who use that means of transportation to maintain the character of the goods as imports after the goods are in this country.

Appellants' third argument is that imports lose their character as such when sorted and commingled with other shipments preliminary to sale. As we read Brown v. Maryland, supra, it establishes a "two-hat" approach to importers for resale. Such importers are free to deal with their goods as imports after the goods are in this country; and, if they do so, the goods remain immune from state taxation. When, however, the importer deals with his goods as a seller, he becomes Chief Justice Marshall's

'itinerant peddler'; and the goods become subject to state taxation. The original package doctrine is not a mechanical, universally applicable test; it is, instead, a useful means in many cases of determining which hat the importer-seller is wearing, because frequently the act of breaking the original package is preliminary to converting the imports to salable units.

In the case at bar the entire Michelin tire inventory was unpackaged, and all shipments in the inventory were commingled and stored by size and type to make the individual units immediately available for resale. We therefore hold that the tires, imported in bulk without packaging, which have been sorted, segregated by size and style, and commingled with other shipments have lost their status as "imports" and are subject to taxation.

However, packaged imports, the tubes in the corrugated cartons in this case, are not subject to taxation under the "original package" doctrine. This doctrine has been almost universally applied, in a mechanical way, for about 150 years. The great weight of authority makes a vast distinction between goods shipped in packaging, such as crates or cartons, and goods shipped in bulk. Packaged imports retain their status as imports, and are not subject to taxation. Bulk imports that have been mingled with other bulk imports, sorted, and arranged for sale do not retain their status as imports, and they are subject to taxation.

What we do in this case is to merely "draw a line," and it is, admittedly, a difficult line to draw.

*Judgment affirmed in part and reversed in part. All the Justices concur. Hill, J., disqualified.*

ARGUED SEPTEMBER 13, 1974 — DECIDED FEBRUARY 4, 1975 — REHEARING DENIED FEBRUARY 18, 1975.

*Jordan & Jordan, Hill Jordan, Stark, Stark & Henderson,* for appellants.

*Jones, Bird & Howell, Earle B. May, Jr., Edward R. Kane, Webb, Fowler & Tanner, W. Howard Fowler,* for appellee.