**CITY OF FARMERS BRANCH, Texas, et al., Appellants,**

**v.**

**MATSUSHITA ELECTRIC CORPORA- TION OF AMERICA, Appellee.**

No. 838.

Court of Civil Appeals of Texas, Tyler.

July 31, 1975.

Rehearing Denied Aug. 28, 1975.

Durant, Mankoff, Davis & Wolens, Ronald M. Mankoff, C. Robert Rainwater, Dallas, for appellants.

Thompson, Knight, Simmons & Bullion, Jerry Buchmeyer, Dallas, for appellee.

McKAY, Justice.

Plaintiff-appellee, Matsushita Electric Corporation of American (MECA) brought suit against appellants, City of Farmers Branch, Texas, and T. E. Waldrip, the Tax Assessor-Collector of Farmers Branch, seeking a declaratory judgment that certain inventory on hand at MECA's Farmers Branch warehouse on January 1, 1972, is exempt from taxation by virtue of the provisions of Article 1, Section 10, Clause 2 (the Import-Export Clause) of the United States Constitution. Further, MECA sought both temporary and permanent injunctions, enjoining Farmers Branch and Waldrip from attempting to impose, collect or enforce any taxes upon or with respect to the disputed inventory for the year of 1972. The trial court held that imported merchandise brought from Japan and stored in its original cartons in MECA's Farmers Branch warehouse was exempt from taxation, but that any merchandise stored in MECA's warehouse in Farmers Branch which was received from any other MECA warehouse in the United States was not exempt even if the merchandise remained in its original cartons. Also, the court held that any merchandise imported from Puerto Rico and stored in MECA's warehouse in Farmers Branch was not exempt. The parties filed stipulated facts, and pursuant to appellants' request, the trial court filed findings of fact and conclusions of law.

We have this day decided an appeal in *City of Farmers Branch, et al v. American Honda Motor Co., Inc., No. 839,* which appeal raised some of the same questions as are presented here.

This cause of action arose by virtue of appellants' imposition of an ad valorem tax on personal property located within Farmers Branch, under the power vested in it by Article 1165 of the Texas Revised Civil Statutes. MECA rendered to Farmers Branch for taxation certain personal property situated in its warehouse. MECA had additional personal property valued at $2,425,334.70 situated in its Farmers Branch warehouse which it did not render, claiming that the property was exempt under Article 1, Section 10, Clause 2, of the United States Constitution. Of that amount, the total value of Panasonic products imported from Puerto Rico was $140,714.71. It is undisputed that MECA claimed this exemption and pursued all administrative remedies, but was denied the claimed exemption for the disputed inventory.

No manufacturing, repairing or servicing is carried on at the Farmers Branch warehouse, as it is only used to store the imported products prior to their sale and shipment to retailers, dealers, distributors and others in Texas, Louisiana, Mississippi, Arkansas, Oklahoma and three counties in Tennessee.

MECA did not claim any exemption from the ad valorem tax for (1) non-inventory property, (2) property not imported from outside the United States or (3) for imported products which had been removed from the corrugated cartons in which they were shipped from outside the United States. MECA did claim an exemption from taxation for the imported Panasonic products which remained in their original unbroken packages and were imported from either Japan or Puerto Rico.

The Panasonic products imported from Japan were manufactured in Japan and placed in corrugated cartons by the foreign manufacturer. Each carton was taped or stapled at the factory and was loaded into a

large sea van, 40 feet long, 8 feet high and 8½ feet wide, weighing 6,260 pounds, and leased by an independent common carrier. After a sea van was loaded, it proceeded to dockside, was separated from its wheels and cab by crane and loaded onto a ship, where title to the products passed to MECA. The ship proceeded to the United States and at Seattle, Washington, the port of entry, federal custom duties were paid on the products. The entire van was removed from the ship by crane and affixed to a railroad flat car, by which it proceeded to Fort Worth, Texas. There, the van was once again affixed to wheels and a cab and proceeded directly to MECA's warehouse in Farmers Branch. Upon the van's arrival at the warehouse, each of the original corrugated cardboard cartons was unloaded and placed in the warehouse. Throughout the entire process described, the original corrugated cartons remained taped and/or stapled and were stored in that condition in the warehouse until an order was received from a dealer or distributor to purchase the particular products contained in the cartons. After unloading, the van was immediately returned to the carrier for use in transporting goods of other manufacturers and importers. At all times the van was owned or leased by the independent common carrier and MECA at no time had direct control over its progress. The Panasonic products imported from Puerto Rico were purchased by and shipped to MECA in the same manner as those imported from Japan except that the port of entry was New Orleans, Louisiana.

On a few occasions, when the MECA warehouse in Farmers Branch was in short supply of a particular Panasonic product, MECA made arrangements for a shipment of these products from another MECA warehouse in the United States. When these products arrived at the Farmers Branch facility they were in the original unbroken cartons in which they were imported from Japan or Puerto Rico.

In their first point, appellants maintain that the trial court erred in concluding that the goods in the Farmers Branch warehouse of MECA on January 1, 1972, had not been incorporated into the mass of goods in the United States, and, therefore, were still "imports" for the purposes of Article 1, Section 10, Clause 2 of the United States Constitution. Appellants argue that (1) the disputed inventory, through an elaborate marketing system, has lost its character as imports; (2) the disputed inventory has been fully committed to appellee's operational needs and, therefore, should not be tax exempt; and (3) the act of importation may end, and in this case has ended, before the goods are removed from the original package. We disagree.

Article 1, Section 10, Clause 2 of the United States Constitution provides:

"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its Inspection Laws * * *."

In *Brown v. State of Maryland*, 25 U.S. (12 Wheat.) 419, 6 L.Ed. 678 (1827), the Supreme Court interpreted the Import-Export Clause and adopted what has become known as the "original package" doctrine. The Court stated, speaking through Chief Justice Marshall:

"* * * when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the constitution." *Brown v. State of Maryland*, supra, p. 441-2.

The United States Supreme Court has continued to apply the original package doctrine in *Low v. Austin*, 80 U.S. (13 Wall.) 29, 20 L.Ed. 517 (1872); *Hooven & Allison Co. v. Evatt*, 324 U.S. 652, 65 S.Ct. 870, 89

L.Ed. 1252 (1945); and *Dept. of Revenue v. James Beam Distilling Co.*, 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362 (1964). Some of the more recent state and federal court decisions which apply the "original package" doctrine to imported goods held for sale are: *Wages v. Michelin Tire Corporation*, 233 Ga. 712, 214 S.E.2d 349 (1975) cert. granted; *Wilson v. County of Wake*, 19 N.C.App. 536, 199 S.E.2d 665, 668 (1973); *Price Paper Corporation v. Detroit*, 42 Mich. App. 488, 202 N.W.2d 523, 525 (1972); *Sterling Liquor Distributors Inc. v. County of Orange*, 3 Cal.App.3d 510, 83 Cal.Rptr. 571 (1970) cert. denied, 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970); *Tricon, Inc. v. King County*, 60 Wash.2d 392, 374 P.2d 174 (1962) cert. denied, 372 U.S. 908, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963); *Standard-Triumph Motor Company v. City of Houston, Texas*, 220 F.Supp. 732, 734 (S.D.Tex.1963) vacated on other grounds, 347 F.2d 194 (5th Cir. 1965) cert. denied 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966); *State ex rel. H. A. Morton Company v. Board of Review, City of Milwaukee*, 15 Wis.2d 330, 112 N.W.2d 914 (1962); *Miehle Printing Press and Manufacturing Company v. Department of Revenue*, 18 Ill.2d 445, 164 N.E.2d 1 (Ill.1960); *Singer Co. v. County of Kings*, 46 Cal. App.3d 852, 121 Cal.Rptr. 398 (1975).

In the case at bar, the disputed inventory remained as the property of MECA, in MECA's Farmers Branch warehouse in the corrugated cartons in which it was imported. Therefore, applying the "original package" doctrine, we believe that a tax upon the disputed inventory could not escape the prohibition set forth in the Import-Export Clause of the Constitution.

In *Youngstown Sheet and Tube Company v. Bowers*, 358 U.S. 534, 541–2, 79 S.Ct. 383, 3 L.Ed.2d 490 (1959), the Supreme Court, relying upon *Brown v. Maryland*, reemphasized some of the acts or conduct of the importer that would deem the importer to have 'so acted upon the thing imported' as to cause it to be 'mixed up with the mass of property in the country (and to lose) its distinctive character as an import.' The

Court stated that goods lost their character as imports when the importer (1) 'sells them,' (2) '(breaks) up his packages, and (travels) with them as an itinerant pedlar' or (3) when goods are brought into this country by an importer 'for his own use' and are here 'used' by him. Also, see *Brown v. Maryland*, supra.

In the case at bar, at the time of the controversy MECA had not (1) sold the disputed inventory, (2) broken the disputed inventory out of the corrugated cartons in which it was imported, nor (3) brought the disputed inventory into the country for its own use and here used the inventory in such a manner that it has become incorporated and mixed up with the mass of property in the country.

Appellants attempt to rationalize by analogy the facts involved in the case at bar with the opinion of the court in *Youngstown* in which the court stated that the iron ore, lumber, and veneers had been irrevocably committed to use in manufacturing at the plants to which they were shipped and that the iron ore, lumber and veneers were necessarily required to be kept on hand to meet current operational needs and were actually being used to supply those needs. To show that imported goods which are held for sale should be treated similarly to imported goods held for use in manufacturing, appellants cite a quote from *Hooven & Allison Co. v. Evatt,* supra, which is discussed in the following quotation from *Youngstown*, supra, 542, 79 S.Ct. 388:

"In *Hooven & Allison Co. v. Evatt*, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252, it was held that goods imported for 'use' share the same immunity as goods imported for 'sale,' and that goods imported 'for manufacture [do not] lose their character as imports any sooner or more readily than imports for sale' (id., 324 U.S. at page 667, 65 S.Ct. at page 878); but 'when [the imported goods are] used for the purpose for which they are imported, they cease to be imports and their tax exemption is at an end.' Id., 324 U.S. at page 665, 65 S.Ct. at page 877."

The *Youngstown* case has been distinguished many times from cases similar to the case at bar, and we believe that the facts involved here are distinguishable from *Youngstown*. Later in the *Youngstown* opinion is found this language (79 S.Ct. 389):

"* * * The constitutional design was then to immunize imports from taxation by the importing States, and all others through or into which they may pass, so long as they retain their distinctive character as imports. Hence, that design is not impinged by the taxation of materials that were imported for use in manufacturing after all phases of the importation definitely have ended and the materials have been 'put to the use for which they [were] imported.' (*Hooven & Allison Co. v. Evatt*, supra, 324 U.S. [652] at page 657, 65 S.Ct. at page 873), for in such a case they have lost their distinctive character as imports and are subjection to taxation * * *."

We agree with a quote from *Tricon, Inc. v. King County*, supra, 374 P.2d p. 176:

"We do not think the Supreme Court has indicated by implication that goods imported for resale, and which remain in their original containers, lose their character as imports immune from state taxation when they become a part of the importer's current inventory of goods held for sale."

Appellants' first point is overruled.

In their second point appellants maintain the trial court erred in concluding that the general property tax imposed on the disputed inventory is an "impost" or "duty" within the meaning of the import clause of the United States Constitution. Appellants argue that *Youngstown* established that a non-discriminatory property tax does not violate the Import-Export Clause, and that the language of the Import-Export Clause indicates that a general property tax was not within its intended prohibition. We disagree.

The Supreme Court of the United States has rejected appellants' argument in *Low v. Austin*, supra, by holding that while goods retain their character as imports, a tax upon them in any form is within the constitutional prohibition. The court stated: "The question is not as to the extent of the tax, or its equality with respect to taxes on other property, but as *to the power of the State to levy any tax.*" (Emphasis added.) If, in fact, any discrimination against domestic and in favor of foreign producers of goods does result because of the tax immunity of imports, such discrimination is implicit in the constitutional provision and in its purpose to protect imports from state taxation. *Hooven & Allison Co. v. Evatt*, supra. Moreover, the disputed inventory was subject to substantial custom duties while domestic goods are not.

The rationale of *Low* and *Hooven* that all taxes, even non-discriminatory ad valorem taxes, are unconstitutional if imposed upon merchandise which retains its status as imports has been reaffirmed in *Richfield Oil Corp. v. State Board of Equalization*, 329 U.S. 69, 76, 67 S.Ct. 156, 91 L.Ed. 80 (1946) and *Department of Revenue v. James Beam Distilling Company*, supra, 377 U.S. p. 343, 84 S.Ct. 1247.

Appellant also argues that the rationale employed in interstate commerce cases should be applied to the disputed inventory so that a non-discriminatory tax will not violate the import clause.

The Import-Export Clause and the Commerce Clause, while related, are not coterminous. There are two important differences between the two clauses. First the Import-Export Clause prohibits taxation by the states on the import or export, while the application of the Commerce Clause has no relationship to whether an article was, or ever had been, an import or export. Second, the Commerce Clause is not cast in terms of a prohibition against taxes but in terms of power of the Congress to regulate commerce. The Import-Export Clause does not prohibit every state from

laying "any discriminatory" tax on imports or exports, but rather prohibits the state from laying "any" tax—"except what may be absolutely necessary for executing its inspection Laws." *Richfield Oil Corp. v. State Board of Equalization*, supra, 67 S.Ct. 159–60. Consequently, we cannot write any qualifications into the Import-Export Clause. Appellants' second point is overruled.

In their third point, appellants maintain the trial court erred in concluding that the goods stored in the Farmers Branch warehouse of MECA had not been removed from the containers in which they had been transported into this country and, therefore, were not subject to local taxation under the "original package" doctrine. Appellants argue that the sea van is the original package since it is the container in which the units are shipped from Japan or Puerto Rico. We do not agree.

■ The facts in the case at bar reveal that the sea van is furnished by the steamship lines for the purpose of carrying the corrugated cartons overseas and that when the sea vans are unloaded at Farmers Branch, they are returned to the steamship line for use in transporting goods of other manufacturers and importers. The mere use of new technology in shipping should not destroy the tax immunity of the property shipped. Here, the use of the sea van did not go to the essential nature of the transaction, but only to formalities of transportation. Therefore, we do not believe that the opening of the sea vans constitutes the breaking of the original packages. *Wages v. Michelin Tire Corporation*, supra; *Montgomery Ward & Co., Inc. v. County of Alameda*, 390 F.Supp. 177 (N.D.Cal.1975); *Michigan State Tax Commission v. Garment Corporation*, 32 Mich.App. 715, 189 N.W.2d 72, cert. denied, 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971).

In its first cross-point, appellee maintains the trial court erred in holding that merchandise which was imported by MECA and stored at MECA's warehouse in Farmers Branch in its original, unbroken cartons, was not exempt from taxation under the Import-Export Clause if it was first stored in some other MECA warehouse in the United States. We sustain appellee's contention.

■ We are unable to distinguish between the situation in which the disputed inventory is shipped directly from its port of entry to Farmers Branch and the situation in which the disputed inventory is stored in the corrugated cartons in which it was shipped in another MECA warehouse in the United States before it is shipped to Farmers Branch. The Import-Export Clause was intended to immunize imports from taxation by the importing states, and all other states through or into which they may pass so long as they retain their distinctive character as imports. *Youngstown Sheet & Tube Co. v. Bowers*, supra, 79 S.Ct. p. 389. It matters not that the imported merchandise is stored in the original package at the importer's warehouse at the port of entry or in an interior state. This tax immunity attaches and "survives their arrival in this country and continues until they are sold, removed from the original package, or put to the use for which they are imported." *Hooven & Allison Co. v. Evatt*, supra, 324 U.S. p. 657, 65 S.Ct. p. 873; *Wilson v. County of Wake* supra.

■ Therefore, we believe the trial court erred in holding that the disputed inventory which was stored in the "surplus" storage area of another warehouse before it was shipped to the Farmers Branch warehouse, is not exempt from taxation. This portion of the judgment is reversed and rendered for appellee.

In its second cross point, appellee maintains that the trial court erred in holding that merchandise imported by MECA into the United States from Puerto Rico was not an "import" within the meaning of the Import-Export Clause of the United States Constitution. We sustain appellee's contention.

■ Merchandise which is brought into the United States from a place without the country, even though the merchandise does not come from a foreign country, may be considered as "imports." The only material question which must be determined is whether it came from a place *without* the country. *Hooven & Allison Co. v. Evatt,* supra, 671, 65 S.Ct. 870.

■ The United States acquired Puerto Rico by cession without obligation to admit it to statehood or to incorporate it as a part of the United States. We do not believe Puerto Rico is a part of the United States in the sense that it is subject to and enjoys the benefits or protection of the Constitution as do the States which are united under the Constitution. *Hooven & Allison Co. v. Evatt,* supra, 678, 65 S.Ct. 870.

■ Puerto Rico is apparently now a commonwealth. An instrument of government or constitution was adopted by Puerto Rico pursuant to a congressional statute; and it seems to have more autonomy than a territory but is short of statehood. If not "a territory" it is not a part of the country proper. Merchandise brought into one of the United States from Puerto Rico would be "imports" under the Import-Export Clause of the U. S. Constitution and entitled to the immunity from taxation as goods from a foreign country. See *Rice Growers' Assn. of California v. County of Yolo,* 17 Cal.App.3d 227, 94 Cal.Rptr. 847, 852, 853 (1971).

Therefore, we believe that the trial court erred in holding that merchandise imported by MECA into the United States from Puerto Rico was not an "import," and that portion of the trial court's judgment is reversed and judgment is rendered in favor of appellee.

The judgment of the trial court is affirmed in part and reversed in part, and judgment is here rendered for appellee to that portion of the judgment which is reversed.

Since we have affirmed the judgment in part and reversed in part, we tax the costs on appeal and in the court below equally against appellants and appellee. *Coca Cola Bottling Company of Houston v. Hobart,* 423 S.W.2d 118, 126 (Tex.Civ.App.—Houston 14 Dist., 1967, writ ref'd, n. r. e.); *Combined American Insurance Company v. City of Hillsboro,* 421 S.W.2d 488, 491 (Tex.Civ.App.—Waco, 1967, writ ref'd n. r. e.); *Wichita National Bank v. United States Fidelity & Guaranty Co.,* 147 S.W.2d 295, 298 (Tex.Civ.App.—Fort Worth, 1941, n. w. h.); Rule 448, T. R. C. P.

## ON MOTION FOR REHEARING

Appellee Matsushita Electric Corp. of America, moves for a rehearing only insofar as our original opinion and judgment taxes the cost one-half to appellants and one-half to appellee. In our original opinion the judgment of the trial court was affirmed in part and reversed and rendered in part. We taxed the cost one-half to appellants and one-half to appellee.

However, appellee reminds us that the portion of the trial court's judgment we reversed was on the cross-points of appellee and therefore all relief was denied to the appellants and full relief granted to appellee.

■ We confess our error in this regard and accordingly that portion of our original decision in this cause is modified to the extent that all of the costs are taxed against the appellants.

Appellants also have filed a motion for rehearing which we have duly considered and same is overruled.