CITY OF FARMERS BRANCH, Texas,
et al., Appellants,

v.

AMERICAN HONDA MOTOR
COMPANY, INC., Appellee.

No. 839.

Court of Civil Appeal of Texas,
Tyler.

July 31, 1975.

Rehearing Denied Aug. 28, 1975.

Durant, Mankoff, Davis & Wolens, Ronald M. Mankoff, C. Robert Rainwater, Dallas, for appellants.

1. "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be

Carrington, Coleman, Sloman, Johnson & Blumenthal, Marvin S. Sloman, Peter Tierney, Dallas, for appellee.

DUNAGAN, Chief Justice.

Plaintiff-appellee, American Honda Motor Company, Inc. (American Honda) brought suit against appellants City of Farmers Branch, Texas, and T. E. Waldrip, the Tax Assessor-Collector of Farmers Branch, seeking a declaratory judgment that certain inventory on hand at American Honda's Farmers Branch warehouse on January 1, 1972, is exempt from taxation by virtue of the provisions of Article 1, Section 10, Clause 2 (the Import-Export Clause), of the United States Constitution.[1] Further, American Honda sought a permanent injunction, enjoining Farmers Branch and Waldrip from attempting to impose, collect or enforce any taxes upon or with respect to the disputed inventory for the year of 1972. In a non-jury trial, the court held that imported merchandise in American Honda's surplus storage brought to Farmers Branch directly from Japan was exempt from taxation under the Import-Export clause, but that otherwise exempt imports in "surplus storage" in American Honda's Farmers Branch warehouse brought from "surplus storage" in other warehouses of American Honda in the continental United States were not exempt. The parties filed stipulated facts, and pursuant to appellants' request, the trial court filed finding of fact and conclusions of law.

We have this day decided an appeal in *City of Farmers Branch et al. v. Matsushita Electric Corporation of America*, 527 S.W.2d 768, which appeal raised some of the same questions as are presented here.

This cause of action arose by virtue of appellants' imposition of an ad valorem tax on personal property located within Farmers Branch, under the power vested in it by Article 1165 of the Texas Revised Civil

absolutely necessary for executing its Inspection Laws; * * *"

Statutes.[2] On January 1, 1972, American Honda rendered for taxation personal property valued at $160,310.85 which was situated in its warehouse in Farmers Branch. American Honda also had additional property valued at $293,050.15 in its warehouse which it did not render for taxation, claiming that the property was exempt under Article 1, Section 10, Clause 2, of the United States Constitution. It is undisputed that American Honda claimed this exemption and pursued all administrative remedies, but was denied the claimed exemption for the inventory in question.

The disputed inventory consisted of parts and accessories for motorcycles, automobiles or outboard motors which were manufactured by Honda, Ltd., in Japan and distributed domestically to American Honda's warehouses situated throughout the United States. The location of American Honda's warehouses is determined in substantial part by the geographical pattern of retail demand for appellee's units and the parts needed for repair of consumer-owned units. All goods shipped by Honda, Ltd. to appellee, including all of the disputed inventory on January 1, 1972, were subject to United States' custom duties which had been paid by custom brokers on behalf of American Honda.

In its Gardena, California, offices American Honda maintains a perpetual inventory count of all units and parts of stock in each of its warehouses in the United States by means of its data processing system. To determine the size of its inventories in each warehouse, American Honda considers various factors such as demand requirements, budgetary considerations, availability from source, anticipated monetary revaluations and other special considerations such as the possibility of future material shortages. The inventory turnover of parts at American Honda's Farmers Branch warehouses is approximately once a year or slightly more than once a year.

When parts are ordered by American Honda, employees of Honda, Ltd. at its warehouse in Japan put these parts in corrugated cartons and seal them. These corrugated cartons are then placed in sea vans by Honda, Ltd.'s employees and the sea vans are transported to the steamship dock in Japan where they are loaded onto steamships for transport to the United States. Except for a few specialized instances, the cartons of parts contain a relatively large number of items per carton.

The steamship line whose vessel is to carry a specific shipment supplies a sea van at the Honda, Ltd. parts warehouse dock in Japan for use in transporting corrugated cartons of parts to the United States. A sea van is a large metal container which weighs 6,200 pounds and measures 40 feet long, eight feet high and eight and one-half feet wide. The van is at all times owned by the steamship line and is furnished by the steamship line for the purpose of carrying the cargo of sealed corrugated cartons overseas. When the sea vans have been unloaded at Farmers Branch, Gardena, and elsewhere, they are returned to the steamship line which owns them at a port of entry in the United States.

2. "Cities having more than five thousand inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature. No charter or any ordinances passed under said charter shall contain any provision inconsistent with the Constitution or general laws of this State; said cities may levy, assess and collect such taxes as may be authorized by law, or by their charters; but no tax for any purpose shall ever be lawful for any one year which shall exceed two and one-half per cent of the taxable property of such city, and no debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent thereon. No city charter shall be altered, amended or repealed oftener than every two years. The governing body of such city may, by two-thirds votes of its members, or upon petition of ten per cent of the qualified voters of said city, shall provide by ordinance for the submission of the question, 'shall a commission be chosen to frame a new charter.' "

In 1971, the sea vans from Japan were brought to American Honda's Gardena, California, warehouse where they were opened and the sealed corrugated cartons were unloaded and placed in enclosed semi-trailer trucks for shipment to American Honda's Farmers Branch warehouse or they were stocked in "surplus inventory" at American Honda's Gardena warehouse and, at a later time, forwarded to the Farmers Branch warehouse for "surplus storage" there.

There are two segregated areas for storing the inventory at American Honda's Farmers Branch warehouse. The area for the storage of the sealed unopened corrugated cartons is designated "surplus storage" and is segregated from other parts of the warehouse. When the sealed unopened corrugated cartons arrive at American Honda's Farmers Branch warehouse, employees unload these cartons at a receiving area and they are taken to the "surplus storage" area until they are needed in the "open stock" area.

The "open stock" area is the other area for storing inventory at Farmers Branch. It is segregated from the "surplus storage" area and consists of storage bins of parts which are no longer in cartons and are for current use in filling orders. When an open stock bin becomes low on parts, it is refilled by removing a carton from "surplus storage," opening the carton and distributing its contents into the depleted open stock bin. Sometimes, sealed and unopened cartons which normally would be stored in the "surplus storage" area are kept on top of the racks containing bins of open stock in the "open stock" area although the cartons remain sealed and unopened. This area is referred to as "above-bin surplus storage." These cartons, though sealed and unopened, are not included in the inventory-count of "surplus storage" and are not included in the count of disputed inventory.

Transfers of stock from the American Honda Farmers Branch warehouse to other American Honda warehouses in the United States are made from both "open stock" and from the stock of sealed and unopened corrugated cartons in "surplus storage" and "above-bin surplus storage" while transfers of stock from Gardena, California, to the Farmers Branch warehouse are out of stock of sealed corrugated cartons in "surplus storage" and not from "open stock."

The main function of appellee's warehouses, including its warehouse in Farmers Branch, is to store merchandise which is necessary to supply to retail dealers carrying "Honda" brand merchandise in the southwest region. No manufacturing, repair work, or servicing is carried on at the American Honda warehouse in Farmers Branch. All disputed inventory on hand at the American Honda warehouse in Farmers Branch on January 1, 1972, was the property of American Honda, unsold, segregated in the "surplus storage area" of the warehouse, and in the original unopened corrugated cartons in which it was packed in Japan.

In their first point, appellants maintain the trial court erred in finding that the disputed inventory in the Farmers Branch warehouse of American Honda on January 1, 1972, had not been incorporated into the mass of goods in the United States and, therefore, was still "imports" for the purposes of Article 1, Section 10, Clause 2, of the United States Constitution. Appellants rely primarily on *Youngstown Sheet and Tube Company v. Bowers*, 358 U.S. 534, 541–42, 79 S.Ct. 383, 387, 3 L.Ed.2d 490 (1959), and argue that (1) the disputed inventory has lost its character as imports; (2) the disputed inventory has been fully committed to the appellee's operational needs and, therefore, should not be tax exempt; and (3) the act of importation which is protected by Article 1, Section 10, Clause 2, may end, and in this particular case, has ended, before the goods are removed from the original package. We disagree.

In *Brown v. State of Maryland*, 25 U.S. (12 Wheat.) 419, 6 L.Ed. 678, 686 (1827), the Supreme Court interpreted the Import-Export clause and espoused what has become known as the "original package" doctrine. The court speaking through Chief Justice

Marshall stated that " * * * (w)hen the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state, but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the Constitution."

The United States Supreme Court has continued to apply the original package doctrine in: *Low v. Austin,* 80 U.S. (13 Wall.) 29, 20 L.Ed. 517 (1872); *Hooven & Allison Co. v. Evatt,* 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945), and *Dep't. of Revenue v. James Beam Distilling Co.,* 377 U.S. 341, 84 S.Ct. 1247, 12 L.Ed.2d 362 (1964). Some of the more recent state and federal court decisions which apply the "original package" doctrine to imported goods held for sale are: *Wages v. Michelin Tire Corporation,* 233 Ga. 712, 214 S.E.2d 349 (1975, cert. granted); *Wilson v. County of Wake,* 19 N.C.App. 536, 199 S.E.2d 665, 668 (1973); *Price Paper Corporation v. Detroit,* 42 Mich. App. 488, 202 N.W.2d 523, 525 (1972); *Sterling Liquor Distributors, Inc. v. County of Orange,* 3 Cal.App.3d 510, 83 Cal.Rptr. 571, (1970), cert. denied, 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970); *Tricon, Inc. v. King County,* 60 Wash.2d 392, 374 P.2d 174 (1962), cert. denied, 372 U.S. 908, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963); *Standard-Triumph Motor Company v. City of Houston, Texas,* 220 F.Supp. 732, 734 (S.D.Tex.1963), vacated on other grounds, 347 F.2d 194 (5th Cir. 1965), cert. denied 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966); *State ex rel. H. A. Morton Company v. Board of Review, City of Milwaukee,* 15 Wis.2d 330, 112 N.W.2d 914 (1962); *Miehle Printing Press and Manufacturing Company v. Department of Revenue,* 18 Ill.2d 445, 164 N.E.2d 1 (1960).

In the case at bar, the disputed inventory remained as the property of American Honda, the importer, in a segregated part of American Honda's Farmers Branch warehouse, in the original corrugated cartons in which it was imported. Therefore, applying the "original package" doctrine, we believe that a tax upon the disputed inventory was subject to the prohibition set forth in the Import-Export clause of the Constitution.

In *Youngstown Sheet and Tube Company v. Bowers,* supra, the Supreme Court, relying upon *Brown v. State of Maryland,* supra, reemphasized some of the acts or conduct of the importer that would deem the importer to have "so acted upon the thing imported" as to cause it to be "mixed up with the mass of property in the country (and to lose), its distinctive character as an import." The court stated that goods lose their character as imports when the importer (1) "sells them," (2) "(breaks) up his packages, and (travels) with them as an itinerant pedlar," or (3) when goods are brought into this country by an importer "for his own use" and are here "used" by him. Also, see *Brown v. State of Maryland,* supra.

In the case at bar, the disputed inventory owned by American Honda has not been (1) sold (2) it had not been broken out of the corrugated cartons in which it was imported, nor was it (3) brought into this country for Honda's own use or consumption. It was simply stored in its original packages in a segregated place until it was needed to supply the demand of the American market.

Appellants attempt to rationalize by analogy the facts involved in the case at bar with the rationale of the court in *Youngstown* in which the court stated that the iron ore, lumber, and veneers had been irrevocably committed to use in manufacturing at the plants to which they were shipped and that the iron ore, lumber and veneers were necessarily required to be kept on hand to meet current operational needs and were actually being used to supply those needs. To show that imported goods which are held for sale should be treated similarly to

imported goods held for use in manufacturing, appellants cite a quote from *Hooven & Allison Co. v. Evatt,* supra, which is discussed in the following quotation from *Youngstown Sheet and Tube Company v. Bowers,* supra, 358 U.S. p. 542, 79 S.Ct. p. 388: "In *Hooven & Allison Co. v. Evatt,* 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252, it was held that goods imported for 'use' share the same immunity as goods imported for 'sale,' and that goods imported 'for manufacture (do not) lose their character as imports any sooner or more readily than imports for sale' * * * ; but 'when (the imported goods are) used for the purpose for which they are imported, they cease to be imports and their tax exemption is at an end.'"

Nevertheless, we believe that the facts involved in the case at bar are distinguishable from *Youngstown* for at least three reasons. First, notwithstanding the previously mentioned quote from *Youngstown,* we have not been cited nor have we been able to find any factually similar cases which hold that goods which were imported for sale and stored in their original containers (as opposed to goods imported for use in manufacturing) were irrevocably committed to the purpose for which they were imported and were necessarily required to be kept on hand to meet current operational needs and were actually being used to supply those needs. In this regard, we quote from *Tricon, Inc. v. King Country,* supra, 374 P.2d p. 176, where certiorari was denied: "We do not think the Supreme Court has indicated by implication that goods imported for resale, and which remain in their original containers, lose their character as imports immune from state taxation when they become a part of the importer's current inventory of goods held for sale."

Second, there is no finding as to what portion, if any, of the disputed inventory was necessarily required to meet current operational needs. Certainly, the most current operational needs were filled from inventory taken from the "open stock" bins.

Third, the disputed inventory is not necessarily at its final destination when it reaches American Honda's warehouse in Farmers Branch. The stipulated facts, as well as the trial court's findings of facts, reveal that sometimes transfers of stock from the American Honda Farmers Branch warehouse were made to other American Honda warehouses in the United States even though the transfers are made from both "open stock" and from the stock of sealed corrugated cartons in "surplus storage." Appellants' first point is overruled.

■ In their second point, appellants maintain the trial court erred in finding that the general property tax imposed on the disputed inventory is an "impost" or "duty" contrary to the import clause of the United States Constitution. Appellants argue that *Youngstown* established that a non-discriminatory property tax does not violate the Import-Export clause, and that the language of the Import-Export clause indicates that a general property tax was not within its intended prohibition. We disagree.

The Supreme Court of the United States has rejected appellants' argument in *Low v. Austin,* supra, by holding that while goods retain their character as imports, a tax upon them in any shape, is within the constitutional prohibition. The court stated that: "The question is not as to the extent of the tax or its equality with respect to taxes on other property, but as to the power of the state to levy any tax." If, in fact, any discrimination against domestic and in favor of foreign producers of goods does result because of the tax immunity of imports, such discrimination is implicit in the constitutional provision and in its purpose to protect imports from state taxation. *Hooven & Allison Co. v. Evatt,* supra. Moreover, the disputed inventory was subject to substantial custom duties while domestic goods are not.

The rationale of *Low* and *Hooven* that all taxes, even non-discriminatory ad valorem taxes, are unconstitutional if imposed upon merchandise which retains its status as imports has been reaffirmed in *Richfield Oil Corp. v. State Board of Equalization,* 329

U.S. 69, 76, 67 S.Ct. 156, 91 L.Ed. 80 (1946), and *Department of Revenue v. James Beam Distilling Company,* supra, 377 U.S. p. 343, 84 S.Ct. 1247.

Appellant also argues that the rationale employed in interstate commerce cases should be applied to the disputed inventory so that a non-discriminatory tax will not violate the Import-Export clause.

■ The Import-Export clause and the Commerce clause, while related, are not co-terminous. There are two important differences between the two clauses. First, the Import-Export clause prohibits taxation by the states on the import or export, while the application of the Commerce clause has no relationship to whether an article was or ever has been, an import or export. Second, the Commerce clause is not cast in terms of a prohibition against taxes but in terms of power of the Congress to regulate commerce. The Import-Export clause does not prohibit every state from laying "any discriminatory" tax on imports or exports, but rather prohibits the state from laying "any tax" "except what may be absolutely necessary for executing its inspection Laws." *Richfield Oil Corp. v. State Board of Equalization,* 67 S.Ct., pp. 159–160. Consequently, we certainly cannot write any qualifications into the Import-Export clause. Appellants' second point is overruled.

In their third point, appellants maintain the trial court erred in finding that the goods stored in the Farmers Branch warehouse of American Honda had not been removed from the containers in which they had been transported into this country and, therefore, were not subject to local taxation under the "original package" doctrine.

■ The facts reveal that the sea van is furnished by the steamship line for the purpose of carrying the sealed corrugated cartons overseas and that when the sea vans are unloaded at Farmers Branch, Gardena, or elsewhere, they are returned to the steamship line. The mere use of new technology in shipping should not destroy the tax immunity of the property shipped. *Michigan State Tax Commission v. Garment Corporation,* 32 Mich.App. 715, 189 N.W.2d 72, 74, cert. denied 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971); *Wages v. Michelin Tire Corporation,* 233 Ga. 712, 214 S.E.2d 349, 355 (1975), cert. granted. Therefore, we do not believe that the opening of the sea vans constitutes the breaking of the original packages.

Appellants rely primarily on *Volkswagen Pacific, Inc. v. City of Los Angeles,* 7 Cal.3d 48, 101 Cal.Rptr. 869, 874, 496 P.2d 1237, 1242 (1972). However, in *Volkswagen Pacific, Inc.,* the court recognized that " * * it would not follow as a matter of law that merely because an importing agent removed the parts from the vans, they then lost the constitutional protection of imported articles." Also, the court recognized that " * * * the opening of such a container by an importer may not necessarily be effected 'for the sale or delivery of the separate parcels contained in it' * * * but may instead be accomplished so that the importer can by other means of transportation divert his imports to his outlets in different interior states." The facts in the instant case fit squarely within the exception recognized by the court in *Volkswagen Pacific, Inc.* The sea vans containing the disputed inventory were brought to American Honda's warehouse in Gardena where the seal on the sea van would be broken and the sealed corrugated cartons would be unloaded into enclosed semi-trailer trucks and shipped to Farmers Branch. There was no breaking of the original package. Appellants' third point is overruled.

By way of a crosspoint of error, appellee attacks the judgment and maintains that the trial court erred in finding that a part of the disputed inventory received in sea vans from Japan in Gardena, California, stocked in "surplus inventory" at the Gardena warehouse of American Honda, and later shipped to American Honda's "surplus inventory" in Farmers Branch is not exempt from taxation under the provisions of Article 1, Section 10, Clause 2, of

the United States Constitution. We sustain this contention.

■ We are unable to distinguish between the situation in which the disputed inventory is shipped directly from the Gardena port of entry upon its arrival from Japan, and the situation in which the disputed inventory is temporarily stored in the "surplus storage" area of the Gardena warehouse before it is shipped to Farmers Branch. In both situations, the disputed inventory was segregated and stored in the "surplus storage" area in its original packages. The Import-Export clause was intended to immunize imports from taxation by the importing states, and all other states through or into which they may pass, so long as they retain their distinctive character as imports. *Youngstown Sheet and Tube Company v. Bowers,* supra, 358 U.S. p. 545, 79 S.Ct. 383. The immunity attaches "whether the imported merchandise is stored in the original package in the importer's warehouse at the port of entry or in an interior state." *Hooven & Allison Co. v. Evatt,* supra, 324 U.S. p. 664, 65 S.Ct. p. 877. *Wilson v. County of Wake,* supra.

■ We believe, therefore, that the trial court erred in holding that the disputed inventory, which was temporarily stored in the "surplus storage" area of the Gardena warehouse before it was shipped to the Farmers Branch warehouse was subject to taxation by Farmers Branch. This portion of the judgment is reversed and judgment rendered for appellee. In all other respects, the trial court's judgment is affirmed.

Since we have affirmed the judgment in part and reversed in part, we tax the costs on appeal and in the court below equally against appellants and appellee. *Coca Cola Bottling Company of Houston v. Hobart,* 423 S.W.2d 118, 126 (Tex.Civ.App., Houston, 14th Dist., 1967, writ ref., n. r. e.); *Combined American Insurance Company v. City of Hillsboro,* 421 S.W.2d 488, 491 (Tex.Civ. App., Waco, 1967, writ ref., n. r. e.); *Wichita National Bank v. United States Fidelity & Guaranty Co.,* 147 S.W.2d 295, 298 (Tex.

Civ.App., Fort Worth, 1941, n. w. h.); Rule 448, T.R.C.P.

Affirmed in part and reversed and rendered in part.

## ON MOTION FOR REHEARING

Appellee, American Honda Motor Company, Inc., moves for a rehearing only insofar as our original opinion and judgment taxes the cost one-half to appellants and one-half to appellee. In our original opinion the judgment of the trial court was affirmed in part and reversed and rendered in part. We taxed the cost one-half to appellants and one-half to appellee.

However, appellee reminds us that the portion of the trial court's judgment we reversed was on the cross-points of appellee and therefore all relief was denied to the appellants and full relief granted to appellee.

■ We confess our error in this regard and accordingly that portion of our original decision in this cause is modified to the extent that all of the costs are taxed against the appellants.

Appellants also have filed a motion for rehearing which we have duly considered and same is overruled.